Esperanza SANYER, Plaintiff,

v.

**KIMBERLY QUALITY
CARE, Defendant.**

No. 95–CV–2461 (FB).

United States District Court,
E.D. New York.

July 18, 1997.

Esperanza Sanyer, Brooklyn, NY, pro se.

Leslie R. Bennett, McMillan, Rather, Bennett & Rigano, P.C., Melville, NY, for Defendant.

### *AMENDED MEMORANDUM AND ORDER*

BLOCK, District Judge:

Plaintiff Esperanza Sanyer ("Sanyer"), a Spanish-speaking native of Ecuador, alleges that her former employer, defendant Quality Care–USA d/b/a Olsten Kimberly Quality Care (sued herein as Kimberly Quality Care) ("Kimberly"), discriminated against her based upon her national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Pending before the Court is Kimberly's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. Because this court concludes that there is no genuine issue of material fact to be tried in this case and that Kimberly is entitled to judgment as a matter of law, Kimberly's motion is granted and the complaint dismissed.

### BACKGROUND

The material facts of this case are essentially undisputed. In December of 1990, Sanyer enrolled in a training course offered by Kimberly in order to become a home healthcare worker. Sanyer indicated at her deposition that she was informed at the time she filled out the application that she would be required to have a rubella vaccine. After she completed the course, she was advised by Kimberly employees that they were having trouble verifying her references and that documentation regarding the rubella vaccine was missing from her medical records. There was consequently some delay before Sanyer was sent on assignments, although other members of Sanyer's class were apparently sent on assignments immediately after completing the course.

On August 31, 1991 and September 1, 1991, Sanyer was sent on a home healthcare assignment to the home of Lillian Davis in Far Rockaway, New York. Davis was terminally ill and required feeding through a tube. On both days, Sanyer was scheduled to arrive at 8 AM and leave at 8 PM. However, Sanyer admitted at her deposition that (1) on August 31, she arrived at 12:30 PM; (2) on September 1, she left between 6:00 PM and 6:30 PM; and (3) she submitted a time sheet to Kimberly that indicated that she worked from 8 AM to 8 PM on both days. At her deposition, Sanyer, while admitting that the time sheets were inaccurate, contended that "[e]verybody makes mistakes. Everybody makes an error." Exhibit D to Defendant's Notice of Motion at 48.

On September 12, 1991, Kimberly terminated Sanyer's employment, ostensibly based upon her conduct at Davis's house. The Staff Disciplinary Form that was filled out at the time identified her late arrival on August 31, her failure to notify the office with regard to her absence from Davis's home, her submission of incorrect time sheets, and her failure to obtain authorization to leave early on September 1 as the reasons for her termination from Kimberly.

Sanyer filed a Charge of Discrimination with the New York State Division of Human Rights ("Division of Human Rights") and the United States Equal Employment Opportuni-

ty Commission ("EEOC"). She claimed that although she had passed the training course, she was given less favorable assignments than the other trainees and that she had been discriminated against based upon her national origin. Both the Division of Human Rights and the EEOC determined that there was no cause to believe that Kimberly had engaged in unlawful discrimination. On June 30, 1995, Sanyer filed the instant action. Although Sanyer's complaint alleges both a violation of Title VII of the Civil Rights Act of 1964 *and* a violation of the Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. § 621–634, Sanyer's only argument, both here and at the administrative level, has been that she was discriminated against based upon her national origin. This motion ensued.

## DISCUSSION

The standard for reviewing a motion for summary judgment is well-established. A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552–2553, 91 L.Ed.2d 265 (1986); *Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 36 (2d Cir.1994). The burden is upon the moving party to show that no genuine issue of material fact exists, and all ambiguities must be resolved, and all inferences drawn, in favor of the nonmoving party. *See Gallo v. Prudential Residential Services,* 22 F.3d 1219, 1223 (2d Cir.1994). Further, *pro se* litigants confronted with motions for summary judgment must be accorded special protection. *See Ruotolo v. Internal Revenue Serv.,* 28 F.3d 6, 8 (2d Cir.1994); *Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir.1988). In a case presenting a claim of employment discrimination, the court must be especially cautious about granting summary judgment, since the employer's intent is at issue and there is rarely documentary evidence that would directly support a claim of intentional discrimination. *Id.* at 1224; *see also Chertkova v. Connecticut General Life Ins. Co.,* 92 F.3d 81, 87 (2d Cir.1996).

In evaluating Kimberly's motion, the Court uses the three-step burden shifting analysis first articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 803–804, 93 S.Ct. 1817, 1824–1825, 36 L.Ed.2d 668 (1973). *See also St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506–508, 113 S.Ct. 2742, 2746–2748, 125 L.Ed.2d 407 (1993). Initially, the plaintiff has the burden of establishing a *prima facie* case of unlawful discrimination. *See Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir.1995); *see also Chertkova,* 92 F.3d at 87. The *prima facie* case may rest upon evidence that the plaintiff belongs to a protected group, that she was qualified to hold the subject position, that she was terminated from the position, and that the termination occurred under circumstances giving rise to an inference of discrimination. *See Gallo,* 22 F.3d at 1224. Although plaintiff's burden in this regard has been described as *"de minimis," Goenaga,* 51 F.3d at 18, "the plaintiff cannot meet this burden through reliance on unsupported assertions." *Id.*

Once the plaintiff has shown that she has a *prima facie* case, a presumption of unlawful discrimination arises and the burden of production then shifts to the employer, which must articulate a legitimate reason for the employment decision at issue. *Chertkova,* 92 F.3d at 87. If the employer satisfies this burden, the plaintiff must then prove by a preponderance of the evidence that the impermissible factor, such as national origin, substantially motivated the adverse employment decision. *Fields v. New York State Office of Mental Retardation and Developmental Disabilities,* 115 F.3d 116, 119 (2d Cir.1997).

Preliminarily, the Court points out that Sanyer presents two separate arguments in support of her claim of discrimination. First, she argues that she was initially not given assignments and then was given difficult assignments, for discriminatory reasons. Second, she contends that her termination was also the result of unlawful discrimination based upon her national origin. As to both, the Court concludes that Sanyer

has met her initial, *de minimis* burden of establishing a *prima facie* case of discrimination. As a Spanish-speaking immigrant from Ecuador, Sanyer falls within a protected class. She completed the training course and was sent on assignments; therefore, she was qualified to hold the position from which she was terminated. Further, she has identified her inability to speak English well as a factor in her receiving difficult assignments and in her problems in dealing with her supervisors at Kimberly. She claims that other trainees who spoke better English than she were given better assignments. Given that Sanyer's burden of demonstrating a *prima facie* case is slight, and keeping in mind her *pro se* status, the Court concludes that she has satisfied this initial requirement.

■ The Court determines, however, that Kimberly has articulated legitimate non-discriminatory reasons for its treatment of Sanyer while she was employed by Kimberly. Kimberly relies largely upon the transcript of Sanyer's deposition in support of its motion. With regard to Sanyer's claim regarding the manner in which cases were assigned, she admitted at her deposition that (1) she had been informed at the time she applied for the training course that she would need to submit proof that she had been vaccinated for rubella, and (2) after she completed the course, she was told by Kimberly employees that her medical records were not complete and that they were also having trouble contacting her references. Sanyer's complaints about the cases to which she was assigned center upon the neighborhoods in which her clients lived and the difficulty she experienced in locating their residences. There is evidence in the record before this Court that fully one-half of the trainees in Sanyer's class were Hispanic and that they were assigned to cases immediately after completion of the course and without incident. The Court concludes that Kimberly has demonstrated legitimate, non-discriminatory reasons for the manner in which they assigned cases to Sanyer.

■ As to Sanyer's claim that she was terminated for discriminatory reasons, Sanyer admitted at her deposition that she arrived late at her assignment at the Davis home on August 31 and left early on September 1, but nonetheless submitted a time sheet indicating that she had worked her entire 12–hour shift on both days. She also indicated that she had submitted an inaccurate time sheet because in her opinion, she was not being paid enough. As noted above, the disciplinary form that was completed by Kimberly at the time of Sanyer's discharge indicates that she was terminated because of her lateness, her submission of an inaccurate time sheet, her failure to seek authorization to leave early, and her failure to notify Kimberly regarding her absences from the Davis home. Based upon the foregoing, the Court concludes that Kimberly has demonstrated legitimate, non-discriminatory reasons for Sanyer's discharge.

■ Having concluded that Kimberly satisfied its burden of production, the burden shifts to Sanyer to show that her national origin motivated Kimberly's decision to terminate her employment. *Fields,* 115 F.3d at 120–121. Sanyer may proffer additional evidence or may rely upon the evidence comprising her *prima facie* case, without more. *See Chambers,* 43 F.3d at 38. Here, Sanyer has proffered no evidence in support of her claim that Kimberly discriminated against her based upon her national origin. Her arguments in that regard are conclusory, without the slightest shred of documentary support, and are wholly belied by the record in this case, which demonstrates that Sanyer admittedly arrived late and left early from her assignment at the Davis home and then falsified her time sheet so that she would be paid for two full 12–hour shifts. Although she claims that she was treated differently from trainees who spoke better English than she did, this claim is pure conjecture. The Second Circuit has held that "[p]urely conclusory allegations of discrimination, absent any concrete particulars," will be insufficient to withstand a defendant's summary judgment motion. *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.1985); *see also Gottlieb v. County of Orange,* 84 F.3d 511, 518 (2d Cir.1996); *Goenaga,* 51 F.3d at 18.

Accordingly, as Sanyer has failed to respond to Kimberly's "properly supported showing sufficient to suggest the absence of

any genuine issue as to a material fact" with "evidence sufficient to support a jury verdict in [her] favor," *Goenaga,* 51 F.3d at 18, Kimberly's motion for summary judgment is granted and the complaint dismissed.

## CONCLUSION

The Court grants Kimberly's motion for summary judgment and accordingly dismisses Sanyer's complaint.

**SO ORDERED.**