**Jose GOENAGA, Plaintiff–Appellant,**

v.

**MARCH OF DIMES BIRTH DEFECTS FOUNDATION, Defendant–Appellee.**

No. 1110, Docket 94–7884.

United States Court of Appeals, Second Circuit.

Argued Feb. 10, 1995.

Decided March 24, 1995.

Jeffrey M. Bernbach, New York City, for plaintiff-appellant.

Gregory B. Nokes, Stamford, CT (Cummings & Lockwood, Stamford, CT, on the brief), for defendant-appellee.

Before: OAKES, KEARSE, and CABRANES, Circuit Judges.

KEARSE, Circuit Judge:

Plaintiff Jose Goenaga appeals from a final judgment of the United States District Court for the Southern District of New York, Vincent L. Broderick, *Judge,* dismissing his complaint against defendant March of Dimes Birth Defects Foundation (the "Foundation") for allegedly discriminating against him on the basis of ethnicity in the granting of severance pay, in violation of 42 U.S.C. § 2000e *et seq.* (1988). The district court granted summary judgment in favor of the Foundation on the ground that Goenaga had failed to show circumstances giving rise to an inference of ethnic discrimination. On appeal, Goenaga contends that summary judgment was improper because there were genuine issues of material fact to be tried. For the reasons that follow, we conclude that his contentions are without merit.

## I. BACKGROUND

Goenaga, who is of hispanic origin, was employed by the Foundation for some 31 years. Prior to August 1993, he held a managerial position at its national headquarters. In August 1993, Goenaga's position was eliminated as part of the Foundation's reduction in force (the "August 1993 RIF") for economic reasons. Goenaga's employment with the Foundation was terminated, and he was granted severance pay. He was also given three months' worth of executive outplacement services to be rendered by an outside firm.

At the time of Goenaga's termination, the Foundation had a Human Resource Policy Manual for Managers ("Policy Manual" or "Manual") which set forth its severance-pay guidelines. The Manual stated that such pay would typically be given to "employees who are terminated because of unsatisfactory performance or because of layoff" (Policy Manual at 2), and that a terminated employee was normally to receive one week's pay for each

year he or she had been employed by the Foundation (*id.* at 3). The Manual also stated, however, that "[t]he maximum severance payment allowed is 6 months. . . ." (*Id.* at 2.) If the terminated employee's manager believed an above-guidelines payment was necessary, it would be allowed only if the manager obtained the approval of "the appropriate National Office Department Head, the VP for Human Resources and the President's Office." (*Id.* at 2–3.) When Goenaga's employment was terminated, he was given 31 weeks' pay as severance pay, *i.e.,* five weeks more than the six-month maximum.

Goenaga complained to the Foundation that four caucasian managers had received proportionately more severance pay than he. He pointed out that Delbert Hurt, a director of field operations employed by the Foundation for one year, and Stephen Kostelny, an area director employed by the Foundation for two years, had each received six months' pay as severance; Goenaga stated that vice presidents Carmine Grande and Mary Anne Visokay, employed by the Foundation for three and five years, respectively, had each received five months' pay plus a one-year consulting agreement. Goenaga requested an increase in his own severance payment. When his request was denied, he complained to the Equal Employment Opportunity Commission and, after receiving a right-to-sue letter from that agency, commenced the present action. Goenaga did not contend that there was discrimination in the termination of his employment but only in the size of his severance payment.

A period of discovery followed, in which depositions were taken of, *inter alios,* Goenaga, Foundation executive vice president Ted Federici, and Visokay, the Foundation's former vice president for human resources whose employment had been terminated as part of the August 1993 RIF and whose severance package included a one-year consulting agreement. The Foundation also produced documents, including a list of employees whose employment had been terminated during the period August 1987 through October 1993, showing the name, position, and ethnicity of the employee, the date of termination, the number of years worked,

and the severance package awarded (the "Termination List").

Visokay, in her deposition, was asked about the Foundation's reasons for granting the amounts of severance pay indicated for various persons on the Termination List. She testified that the Foundation customarily gave favored treatment to vice presidents. She also testified that when the Foundation wished to terminate an employee's employment for poor performance but felt it had not sufficiently documented its criticisms, it would make an above-guidelines severance payment if the employee would give the Foundation a release from liability. Employees terminated not for performance reasons but pursuant to the August 1993 RIF were not required to give releases. Goenaga was not required to give a release.

As to the Foundation's termination of Hurt, Visokay testified that though Hurt's position was eliminated as part of the August 1993 RIF, his employment was terminated not because of that RIF but because of his performance. Hurt had circulated an inappropriate newsletter to his region, and as a result, his manager had decided to terminate him immediately, as of July 1, 1993, though he had received no warning. Visokay testified that Kostelny too was terminated, as of July 1, 1993, for performance-related reasons, not as part of the August 1993 RIF. Hurt and Kostelny each received an above-guidelines severance payment only in exchange for giving the Foundation a release.

The Foundation moved for summary judgment based on documents, deposition testimony, and affidavits, arguing that Goenaga had not been treated differently from anyone to whom he was similarly situated. It argued that the evidence showed that the four caucasians to whom Goenaga compared himself were in fact not comparable, since two were terminated because of their poor performance, not because of the August 1993 RIF, and the other two, though terminated pursuant to that RIF, were vice presidents, which Goenaga was not. The Termination List showed that all other employees terminated because of the August 1993 RIF were given severance payments of roughly one week's salary for each year of employment with the Foundation, and that none of them, except Goenaga, received severance of more than six months' pay.

The Foundation also supported its motion with passages from Goenaga's own deposition testimony in which he admitted (a) that he knew of nothing to contradict Visokay's testimony that the Foundation customarily gave better treatment to vice presidents than to employees below that rank; (b) that he was not aware of any facts that could contradict the Foundation's evidence that the employment of Hurt and Kostelny had been terminated for performance-related reasons and that their above-guidelines severance payments had been given in exchange for their releases; and (c) that, other than Hurt, Kostelny, and the two vice presidents, Goenaga was not aware of any employee terminated as part of the August 1993 RIF who received as severance pay more than one week of pay per year of employment.

In opposition to the motion for summary judgment, Goenaga admitted the existence of the Foundation's Policy Manual, but he asserted that the Manual stated "only a guideline as to the *minimum*" amount that could be paid (Goenaga Affidavit dated July 18, 1994, at ¶ 5 (emphasis in original)), and asserted that there was "no limitation on the severance pay allowable in the policy manual" (Goenaga Statement Pursuant to Local Rule 3(g), at ¶ 8). Goenaga stated that in the past the Foundation had given above-guidelines severance pay to caucasian managers whose positions were equivalent to or lower than Goenaga's, and he listed the names of 14 such employees, culled from the Termination List.

Goenaga's affidavit did not indicate the dates on which the employment of these 14 individuals had been terminated. The Termination List itself, however, revealed that 11 had left the Foundation between September 1988 and May 1992 and that all had left prior to the August 1993 RIF. Many of these individuals had been identified by Visokay in her deposition as employees whose above-guidelines severance awards had been determined in light of the Foundation's concern about the possibility of lawsuits and about the adequacy of its documentation to

defeat such suits; in exchange for their respective severance packages, each had been required to give the Foundation a release. Goenaga had requested production of the releases signed by 18 individuals. The Foundation had produced the releases given by 16, plus documents regarding threatened legal action by the 17th; it noted that although the release for the 18th individual could not be located, Visokay had testified that that release had been obtained by the Foundation in exchange for the additional severance pay.

The district court granted the Foundation's motion for summary judgment. This appeal followed. For the reasons below, we affirm.

## II. DISCUSSION

■ A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In determining whether the nonmoving party has adduced sufficient evidence to defeat summary judgment, we review the matter *de novo*, viewing the record in the light most favorable to the nonmoving party. *See, e.g., New York State Association of Realtors, Inc. v. Shaffer*, 27 F.3d 834, 838 (2d Cir.), *cert. denied*, — U.S. —, 115 S.Ct. 511, 130 L.Ed.2d 418 (1994); *Olin Corp. v. Consolidated Aluminum Corp.*, 5 F.3d 10, 14 (2d Cir.1993).

■ In an employment discrimination case, a plaintiff must show, *inter alia*, circumstances that permit an inference of discrimination on an impermissible basis, *see, e.g., Woroski v. Nashua Corp.*, 31 F.3d 105, 108 (2d Cir.1994); *Spence v. Maryland Casualty Co.*, 995 F.2d 1147, 1155 (2d Cir.1993). When the defendant moves for summary judgment on the ground that there is an absence of evidence to support this essential element, the plaintiff's burden of producing such evidence in opposition to the motion is *de minimis*. *See, e.g., Cronin v. Aetna Life Insurance Co.*, 46 F.3d 196, 203 (2d Cir. 1995); *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir.1994); *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir.1988). Nonetheless, the plaintiff cannot meet this burden through reliance on unsupported assertions. Once the moving party has made a properly supported showing sufficient to suggest the absence of any genuine issue as to a material fact, the nonmoving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his favor. The motion "will not be defeated merely ... on the basis of conjecture or surmise." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). The party opposing summary judgment may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible, *L & L Started Pullets, Inc. v. Gourdine*, 762 F.2d 1, 3–4 (2d Cir.1985); *Wyler v. United States*, 725 F.2d 156, 160 (2d Cir.1983); *Curl v. IBM Corp.*, 517 F.2d 212, 214 (5th Cir.1975), *cert. denied*, 425 U.S. 943, 96 S.Ct. 1683, 48 L.Ed.2d 187 (1976), or "upon the mere allegations or denials of the adverse party's pleading," Fed. R.Civ.P. 56(e).

■ We conclude that Goenaga's opposition to the Foundation's motion did not meet these standards. First, we note that several of Goenaga's arguments made in opposition to the motion for summary judgment and reiterated on this appeal are simply not relevant. For example, though Goenaga states that hispanics were historically underrepresented in the Foundation's workforce and that the Foundation had no affirmative action program, he has never made a claim to which the Foundation's hiring practices were pertinent; nor has he made any claim of discrimination in the termination of his employment. He concedes that he was terminated as part of the August 1993 RIF, and he admits that the motivation for the RIF was purely economic. Further, though Goenaga claimed that some 14 caucasians, in addition to Hurt,

Kostelny, and the two vice presidents, received better severance packages than he, those 14 individuals were terminated prior to, not pursuant to, the August 1993 RIF. Thus, even assuming that Goenaga received less favorable treatment than those employees, their severance awards could not support an inference that the August 1993 RIF, pursuant to which Goenaga was terminated, was implemented in a discriminatory manner.

Second, Goenaga attempted to create an issue of fact by pointing out that Federici, in his deposition, gave no testimony with respect to the Foundation's practice of granting above-guidelines severance pay to employees terminated for performance reasons, in order to avoid potential litigation. In fact, Federici, who was executive vice president, testified that he had little or no involvement in either the terminations of Hurt or Kostelny or the determination of how much severance pay an employee was to receive. Federici testified that he left severance-pay decisions to the pertinent regional managers and Visokay. This was consistent with the Policy Manual, for Federici was executive vice president and Visokay was vice president for human resources, and the Manual provided that permission for extra severance pay was to be obtained from three officials including the "VP for Human Resources" but not including the executive vice president. Goenaga did not come forward with any evidence that Federici had the pertinent knowledge, and Federici's lack of knowledge cannot be used to support Goenaga's claims.

Further, several of Goenaga's arguments ignore or misstate the record. For example, Goenaga asserts erroneously that the Foundation did not produce evidence that its policy was to grant favored severance treatment to vice presidents; in fact, Visokay testified in her deposition that this policy existed. Goenaga also repeatedly asserts that the Policy Manual did not purport to place a cap on severance pay but stated "only" a "minimum"; in fact, however, the document itself stated that "[t]he maximum severance payment allowed is 6 months." Goenaga admitted that the Manual was in effect at the pertinent time, and he cannot create an issue of fact by simply ignoring a provision in the document.

The Foundation supported its motion with documents, affidavits, and deposition testimony showing that no employee below the rank of vice president who was terminated pursuant to the August 1993 RIF received proportionately more severance pay than Goenaga. Goenaga came forward with no evidence of facts to contradict this evidence. And in his deposition, he admitted that he knew of no facts suggesting that the Foundation did not terminate the employment of Hurt and Kostelny as of July 1, 1993, for performance-related reasons, rather than as part of the August 1993 RIF; that he knew of no facts suggesting that the Foundation did not have a policy of treating vice presidents more favorably than those ranked lower; and that he knew of no facts suggesting that any other caucasian terminated pursuant to the August 1993 RIF received more severance pay than one week's pay per year worked.

In sum, the record, taken in the light most favorable to Goenaga, showed that there was no genuine issue to be tried as to the facts (a) that Goenaga's employment was terminated pursuant to an economically motivated RIF, (b) that Goenaga, though not a vice president, received more severance pay than the maximum provided for in the Policy Manual, and (c) that no other employee who was below the rank of vice president and who was terminated pursuant to that RIF received more severance pay than the maximum provided for in the Manual. In light of this record, we conclude that the district court properly ruled that such evidence as Goenaga presented failed to satisfy his *de minimis* burden to show circumstances from which an inference of ethnic discrimination could be drawn. He was not entitled to a trial based on his speculative assertions on matters as to which he admitted he had no knowledge and no evidence. Summary judgment dismissing the complaint was proper.

## CONCLUSION

We have considered all of Goenaga's contentions on this appeal and have found them

to be without merit. The judgment of the district court is affirmed.