Judith SCHACHNER, Plaintiff,

v.

BETH ISRAEL MEDICAL CENTER, NORTH DIVISION, and York Anesthesia Group, Defendants.

No. 96 Civ. 7811(RLC).

United States District Court, S.D. New York.

July 28, 1998.

Jeffrey M. Bernbach, New York City (Jeffrey M. Bernbach, of counsel), for Plaintiff.

Marshall & McEvoy, New York City (Rory J. McEvoy, of counsel), for Defendant Beth Israel Medical Center, North Division.

Wiggins & Dana, New Haven, CT (Penny Q. Seaman, Bonnie L. Patten, of counsel), for Defendant York Anesthesia Group.

## OPINION

ROBERT L. CARTER, District Judge.

This action arises out of defendant hospital's and defendant medical group's failure to hire plaintiff to work as an anesthesiologist, allegedly because of her observance of the Jewish Sabbath. Plaintiff sued under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), and the New York Human Rights Law, N.Y. Exec. Law § 290 et seq. ("NYHRL"). Both defendants now move for summary judgment pursuant to Rule 56, F.R. Civ. P.

### I. Background

In January of 1996, Dr. Fred Epstein, a pediatric neurosurgeon practicing at New York University Medical Center ("NYU"), and Dr. Alejandro Berenstein, a neuroradiologist also at NYU, entered into an agreement with Beth Israel Medical Center, North Division ("Beth Israel"), to leave NYU in order to found and head the Institute for Neurology and Neurosurgery (the "Institute") at Beth Israel. (Pl.'s Mem. of Law at 2). Drs. Epstein and Berenstein subsequently offered positions at the Institute to two anesthesiologists practicing at NYU, Drs. Murray Canter and Patricia Brous, both of whom accepted. (*Id.*) Drs. Epstein and Berenstein delegated to Drs. Canter and Brous the job of recruiting two additional NYU anesthesiologists who: 1) were board certified, 2) were experienced in both neuroanesthesia and pediatric anesthesia; 3) were interested in moving to Beth Israel; 4) possessed a good working relationship with all involved; and 5) had compassion for children. (*Id.* at 3). Drs. Epstein and Berenstein each retained veto power over recommendations made by Drs. Brous or Canter. (*Id.* at 2.).

In February 1996, plaintiff Judith Schachner, an anesthesiologist practicing at NYU, having learned of the imminent departure from NYU of Drs. Epstein and Dr. Schachner, approached Dr. Epstein about joining the anesthesia staff at the Institute. (*Id.* at 3). Plaintiff alleges that Dr. Epstein told her at that time that he was still in the process of negotiating the final deal with Beth Israel and suggested that she check back with him in March. (*Id.*) Over the next several months, Drs. Brous and Canter approached a number of other doctors to offer them positions at the Institute, including Dr. Paul Thompson, Dr. Kenneth Jacobson, and Dr. Margaret Ekstein. (*Id.* at 3–5). Each of them declined the offer.

In late April 1996, Dr. Schachner reiterated her interest in working at Beth Israel to Dr. Epstein. (*Id.* at 6). She claims that Dr. Epstein said that he was interested in her coming to Beth Israel and told her to contact Dr. Canter and Dr. Sundar Koppolu, the Chairman of the Anesthesia Department at Beth Israel, in order to learn more about a potential position there. (*Id.* at 7). Dr. Epstein also passed her name along to Drs. Berenstein, Canter, and Brous. (Epstein Tr. at 27).

In June 1996, after unsuccessfully trying to contact Dr. Koppolu and after learning that Dr. Nancy Lipsitz, a cardiac anesthesiologist at NYU, had been hired by Beth Israel, Dr. Schachner spoke with Dr. Epstein on several more occasions about working at the Institute. (Pl.'s Mem. of Law at 7). Soon thereafter, Dr. Epstein informed plaintiff that she would not be hired by Beth Israel. Instead, the final anesthesiologist position at Beth Israel was filled by Dr. Venkata Maddenini, another NYU doctor. Plaintiff was told by Dr. Jacobson that he thought her Sabbath observance could possibly have been a factor in defendants' decision not to hire her to work at Beth Israel. (*Id.* at 5). In addition, plaintiff alleges that Dr. Epstein also told her that she was not being hired for a position at Beth Israel because she was a Sabbath observer. (*Id.* at 7).

Defendants claim that Dr. Schachner was not hired because Dr. Berenstein felt she was "not as secure as I would have liked," and because "[he] didn't feel comfortable [with her] in the operating room." (Berenstein Tr. at 63, 65; Epstein Tr. at 29–30; Canter Tr. at 54; Brous Tr. at 67). Overall, he felt that working with Dr. Schachner was at times "scary" and "not positive." (Berenstein Tr.

at 67). Drs. Brous, Canter, and Epstein stated that Dr. Berenstein made his opinion of Dr. Schachner known to them before final selections for the remaining anesthesiologist positions were filled. (Epstein Tr. at 30, Canter Tr. at 47–50, Brous Tr. 15, 30).

After the final anesthesiologist position at the Institute was filled, Drs. Brous, Canter, Lipsitz and Maddenini helped form the York Anesthesia Group ("York"), an entity comprised of all anesthesiologists having privileges at Beth Israel and that, by contract, is the exclusive provider of anesthesia to Beth Israel. (*Id.* at 8).

Plaintiff sued both Beth Israel and York under Title VII and the NYHRL, alleging that they denied her employment on account of her religious practice of observing the Jewish Sabbath. Beth Israel and York move for summary judgment pursuant to Rule 56, F.R. Civ. P., on the grounds that plaintiff has failed to carry her initial burden to establish a *prima facie* case of discrimination, a requisite cornerstone of any Title VII and NYHRL litigation. *See McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[1] York also moves for dismissal on the ground that it fails to meet the necessary criteria to be sued under Title VII or NYHRL since it allegedly has no employees.

## II. Discussion

■ In order to establish a *prima facie* case, plaintiff must show: 1) that she is in a protected class; 2) that she applied for and was qualified for a position that the employer was seeking to fill; 3) that, despite her qualifications, she was rejected; and 4) that the circumstances surrounding the employment decision give rise to an inference of unlawful discrimination. *See Woroski v. Nashua Corp.*, 31 F.3d 105, 108 (2d Cir.1994). While defendants do not contest plaintiff's satisfaction of the first three elements of a *prima facie* case, they argue in their summary judgment motion that plaintiff has failed to establish that the events surrounding her employ-ment rejection give rise to an inference of discrimination.

A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering the evidence, all ambiguities and interferences are to be construed and drawn in the light most favorable to the non-moving party. *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir.1995).

When the defendant moves for summary judgment on the ground that there is insufficient evidence to support an inference of discrimination, the plaintiff's burden of producing such evidence in opposition to the motion is *de minimus*. *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 19 (2d Cir.1995). Nonetheless, the plaintiff cannot meet this burden through reliance on unsupported assertions. *Id.* Once the moving party has made a properly supported showing sufficient to suggest the absence of any genuine issue as to a material fact, the non-moving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his favor. *Id.* The party opposing summary judgment may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible, *L & L Started Pullets, Inc. v. Gourdine*, 762 F.2d 1, 3 (2d Cir.1985), or "upon the mere allegations or denials of the adverse party's pleading." Rule 56(e), F.R. Civ. P.

■ Dr. Schachner's religious discrimination claim does not meet the *de minimus* standard. Her argument is undermined by the fact that, in searching for anesthesiologists to join Drs. Epstein and Berenstein,

---

**1.** Beth Israel and York submitted separate motions; however, York's motion incorporated Beth Israel's motion by reference, adding only one additional argument. Therefore, unless otherwise stated, York and Beth Israel's arguments will be deemed the same for purposes of analysis.

defendants offered employment to Dr. Margaret Eckstein, an even stricter observer of the Jewish Sabbath than Dr. Schachner. (Pl.'s Mem. of Law at 16). Whereas Dr. Schachner was willing to work on the Sabbath and submitted to on-call duty on Saturdays,[2] Dr. Eckstein refused to do so. NYU accommodated Dr. Eckstein's religious practice and did not schedule her for any work on Saturdays. (Pl.'s Mem. of Law at 4). Indeed, Dr. Eckstein's proffered position at Beth Israel was conditioned upon her receiving Sabbath observance accommodation like that which she had at NYU. (*Id.*)

In order to prevail over defendants' summary judgment motions, the plaintiff must establish a prima facie case by showing that the facts surrounding defendants' refusal to hire her give rise to an inference of religious discrimination. *Stetson v. NYNEX Service Co.*, 995 F.2d 355, 359–360 (2d Cir.1993). Because defendants offered the same position to someone else with similar religious practices, an inference of discrimination cannot be drawn from their refusal to hire plaintiff. *See, e.g., E.E.O.C. v. Wiltel, Inc.*, 81 F.3d 1508 (10th Cir.1996) (holding that plaintiff failed to establish a *prima facie* case in a religious discrimination suit because, among other reasons, employer hired someone else with identical religious practices); *Eng v. Beth Israel Medical Center*, 93 Civ 3605, 1995 WL 469704 (S.D.N.Y. Aug. 7, 1995) (Patterson, J.) (holding in age discrimination case that plaintiff's dismissal did not give rise to an inference of discrimination when job was subsequently offered to an older individual).

■ Seeking to staunch the flow of life force from her suit, Dr. Schachner argues that an intervening event occurred between Dr. Eckstein's rejection of the employment offer and defendants' ultimate rejection of plaintiff, an event which, according to plaintiff, cures her religious discrimination claim of any defects. Specifically, plaintiff alleges that Dr. Canter and Dr. Eckstein "argued heatedly" in an NYU hallway after Dr. Canter scheduled Dr. Ekstein to work on the

Sabbath. (Pl.'s Mem. of Law at 16). According to plaintiff, this alleged argument triggered a significant backlash among the defendants against Sabbath observers. (*Id.* at 16–19). As evidence of this backlash, plaintiff claims that Dr. Jacobson reported to her that Dr. Brous made anti-semitic comments and stated a refusal to deal with "that Shabbos bullshit" in response to Dr. Jacobson's recommending Dr. Schachner and another Sabbath observer as candidates for the Beth Israel positions. (Pl.'s Mem. of Law at 17). As further proof of defendants' bigotry, plaintiff alleges that Drs. Epstein and Jacobson both said that they thought that her Sabbath observance was the reason she was not selected by defendants. (*Id.* at 5, 7).

Plaintiff's claims of an intervening event and its subsequent repercussions lack support. Plaintiff's only evidence of the alleged argument between Drs. Eckstein and Canter is her own statement. (Pl.'s Affidavit ¶¶ 4,6). Dr. Eckstein denied that she ever argued with Dr. Canter about being scheduled to work on Saturdays and recalled only one instance in which she had to ask Dr. Canter to remove her name from the Saturday on-call list. (Eckstein Tr. at 7). In that instance, Dr. Eckstein stated that she telephoned Dr. Canter with her objection to being placed on the Saturday list in the spring of 1995, well before defendants later offered her a job. (*Id.* at 7, 8). According to Dr. Eckstein, Dr. Canter discussed the situation with her in a "calm and accommodating" manner and then changed the schedule immediately. (*Id.* at 9). Dr. Canter also does not recall any argument with Dr. Eckstein about working on a Saturday. (Canter Tr. at 66). Since prevailing Second Circuit doctrine maintains that mere dispute of a factual issue is insufficient to defeat summary judgment, *Knight v. U.S. Fire Ins., Co.*, 804 F.2d 9, 11–12 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987) (disputed issue of fact must be material to the outcome of the case and must be backed by evidence allowing a rational trier of fact to find for the non-moving party), plaintiff's al-

---

**2.** Dr. Schachner stated that her religious beliefs do not prevent her from working as an anesthesiologist during the Sabbath because "there's absolutely no prohibitions of a doctor working on the Sabbath to cure a patient." (Pl.'s Tr. at 163).

legations concerning the argument are unavailing to her efforts to defeat defendants' motion for summary judgment.

Even assuming arguendo that the alleged argument occurred, plaintiff's accusation that it "sparked a change in attitude in defendants regarding the attractiveness of hiring Sabbath observers" is also unsupported in the record. (Pl.'s Mem. of Law at 18, 19). Plaintiff presents no evidence that Dr. Canter related any disagreement that he had with Dr. Eckstein to Drs. Epstein and Dr. Berenstein, who were the primary decisionmakers in selecting doctors to accompany them to Beth Israel. Moreover, Dr. Jacobson denied ever hearing Dr. Brous make these alleged disparaging comments. (Jacobson Tr. at 24). Plaintiff's testimony to the contrary is inadmissible hearsay under Federal Rule of Evidence 802 [3] and, therefore, cannot be used to withstand a summary judgment motion. *See Finnegan v. Board of Educ. of the Enlarged City Sch. Dist.*, 30 F.3d 273, 274 (2d Cir.1994) (holding that hearsay statement would not have been admissible at trial and hence was insufficient to create a genuine issue to be tried). Finally, Dr. Epstein disavowed suggesting that plaintiff's Sabbath observance was responsible for her not being hired (Epstein's Tr. at 45), and plaintiff provides no other witnesses to refute this denial.

Although Dr. Jacobson admitted telling plaintiff that her Sabbath observance possibly could have been a reason for her rejection, he said that he did so in response to her questioning whether discrimination was a "possibility" in defendants' employment decision. (Jacobson Tr. at 24, 25). According to Dr. Jacobson, he said "yes" in an effort to comfort her in some way, but he had not heard from anyone else that such a possibility existed. (*Id.*) Thus, except for Dr. Jacobson's admission, which is insufficient to support a jury verdict in plaintiff's favor, plaintiff's evidence of a backlash on the part of defendants against Sabbath observers

rests upon her unsubstantiated claims that the defendants' and witnesses' depositions contain false information. Such evidence cannot defeat defendants' summary judgment motion. *See Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991) (summary judgment motion "will not be defeated merely ... on the basis of conjecture or surmise").

Even if plaintiff has established a *prima facie* case, defendants articulated a legitimate, non-discriminatory reason for not hiring her in accordance with the burden shifting formula established in *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817.[4] Specifically, Drs. Berenstein, Brous, Epstein, and Canter all testified to the fact that Dr. Schachner was not hired because Dr. Berenstein was not comfortable with her work habits. (Berenstein Tr. at 63, 65; Epstein Tr. at 29–30; Canter Tr. at 54; Brous Tr. at 67). Plaintiff herself acknowledges that possessing a good working relationship with all the doctors moving to Beth Israel was one of defendants' hiring guidelines. *See* Part I *supra*.

Once the defendant has given a non-discriminatory reason for its employment decision, the plaintiff must present sufficient evidence such that a jury could find that defendants' proffered reason is a pre-text for discrimination. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Goenaga*, 51 F.3d at 18. In the instant case, plaintiff has not presented any admissible evidence that the defendants weighed her religious practices in their hiring decision or even that they discussed her religion at all. Therefore, plaintiff cannot overcome defendants' proffered reason for their failure to her with evidence that would allow a jury to find in her favor.

### III.  Conclusion

Although the four anesthesiologists ultimately chosen by Beth Israel are not Sab-

---

**3.**  This is a statement made by an out of court declarant being offered by plaintiff to prove the truth of the matter asserted.

**4.**  According to the *McDonnell Douglas* framework, once the plaintiff has established a *prima*

*facie* case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its contested employment decision. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817.

bath observers, the fact that a Sabbath observer, Dr. Eckstein, was offered a position by the same entities plaintiff claims discriminated against for being a Sabbath observer requires that plaintiff show more than her own employment rejection in order to give rise to an inference of discrimination. Plaintiff has not done so with substantive evidence. Accordingly, the court finds that the evidence proffered by the plaintiff is inadequate to overcome defendants' motions for summary judgment. *See Goenaga*, 51 F.3d at 18 (affirming summary judgment for the defendant because plaintiff offered only unsupported assertions that he was laid off because he was Hispanic). This case is dismissed.

**IT IS SO ORDERED.**