Francis L. HOEHN, Plaintiff,

v.

INTERNATIONAL SECURITY SER-
VICES AND INVESTIGATIONS,
INC., Defendant.

No. 97–CV–974A.

United States District Court,
W.D. New York.

Oct. 26, 2000.

**258**

Mark J. Collins, Buffalo, NY, for plaintiff.

Harris, Beach & Wilcox (Scott D. Piper, Stephen A. Sharkey, of counsel), Rochester, NY, for defendant.

## ORDER

ARCARA, District Judge.

The above-referenced case was referred to Magistrate Judge Leslie G. Foschio pursuant to 28 U.S.C. § 636(b)(1)(B), on March 4, 1998. On September 22, 2000, Magistrate Judge Foschio filed a Report and Recommendation, recommending that defendant's motion for summary judgment be denied, and that plaintiff's motion that defendant's summary judgment motion be denied be dismissed as moot.

The Court has carefully reviewed the Report and Recommendation, the record in this case, and the pleadings and materials submitted by the parties. No objections having been timely filed, it is hereby

ORDERED, that pursuant to 28 U.S.C. § 636(b)(1), and for the reasons set forth in Magistrate Judge Foschio's Report and Recommendation, defendant's motion for summary judgment is denied, and plaintiff's motion that defendant's summary judgment motion be denied is dismissed as moot. The case is referred back to Magistrate Judge Foschio for further proceedings.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

FOSCHIO, United States Magistrate Judge.

### *JURISDICTION*

This case was referred to the undersigned on March 4, 1998, by Hon. Richard J. Arcara for all pretrial matters including report and recommendation of dispositive motions. The matter is currently before the court on Defendant's motion for summary judgment, filed November 8, 1999 (Docket Item No. 42), and Plaintiff's cross-motion for summary judgment, filed December 20, 1999 (Docket Item No. 45).[1]

### *BACKGROUND*

Plaintiff commenced this action on December 11, 1997, seeking damages and equitable relief for wrongful termination in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*, ("the ADA"), the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.*, (the "ADEA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, ("Title VII"), and the Fifth and Fourteenth Amendments. In particular, Plaintiff alleged that he was terminated from his position as an armed security guard/control center operator on the basis of his physical disability, vision in one eye, age, gender and racial or ethnic background. Plaintiff also sought damages under 42 U.S.C. § 1985(3), alleging Defendants conspired to deprive him of his equal protection rights.

Motions to dismiss the Complaint were filed on March 2, 1998, by Defendants International Security Services and Investigations, Inc. ("ISSI"), Clayton Willman, Donna M. Metz, Ousama Karawija, Jane

---

1. Plaintiff does not seek any independent relief, *e.g.,* for partial summary judgment on the issue of liability; rather, Plaintiff requests only that Defendant's summary judgment motion be denied.

Doe and John Doe, and on March 31, 1998 by Defendant Robert Soden. By order dated May 12, 1999, all claims were dismissed as to Defendants Willman, Metz, Karawija, Jane Doe and John Doe, all claims except for the ADA claim were dismissed as to Defendant ISSI, and Plaintiff was directed to file an amended complaint. Accordingly, on June 9, 1999, Plaintiff filed an amended complaint (Docket Item No. 37), against only Defendant ISSI, alleging a violation of the ADA. On June 25, 1999, ISSI filed its answer to the amended complaint.

On November 18, 1999, ISSI filed a motion for summary judgment (Docket Item No. 42), together with Affidavits of Ousama Karawija ("Karajiwa Affidavit") and Donna Metz ("Metz Affidavit"), and exhibits. The motion was accompanied by a Memorandum of Law in Support of Defendant's Motion for Summary Judgment (Docket Item No. 43) ("Defendant's Memorandum"), and a Statement of Material Facts Not in Dispute (Docket Item No. 44) ("Defendant's Statement of Undisputed Facts"). On December 20, 1999, Plaintiff filed a cross-motion requesting Defendant's motion for summary judgment be denied. (Docket Item No. 45). The motion was accompanied by a Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (Docket Item No. 46) ("Plaintiff's Memorandum"), and a Statement of Disputed Material Facts (Docket Item No. 47) ("Plaintiff's Statement of Disputed Facts"), with attached exhibits in support of the motion. Oral argument was deemed unnecessary.

For the following reasons, Defendant's motion for summary judgment should be DENIED; Plaintiff's motion that Defendant's summary judgment motion be denied should be DISMISSED as moot.

## FACTS[2]

Plaintiff, Francis L. Hoehn ("Hoehn"), age 69, is blind in his right eye as a result of work-related industrial accident which occurred in 1956. He commenced employment as an armed security guard/control center operator on July 7, 1988, working for various companies which contracted with the United States General Services Association ("GSA"), to provide security services at federal buildings throughout New York, including the Thaddeus J. Dulski Federal Office Building ("the Dulski building"), in Buffalo. Hoehn's job duties included monitoring closed circuit television and alarm systems, dispatching personnel using a portable two-way radio, answering the telephone and performing entry control duties at one of the entrances to the Dulski building, including screening visitors for weapons by using a magnetometer, and inspecting packages and briefcases. Hoehn was continuously employed in that position at the Dulski building working first for RJD Security, Inc., then for Command Security Inc., Great Lakes Security and Maintenance Corp., and, finally, for Defendant ISSI which terminated his employment on September 30, 1996.

ISSI, a California corporation with its principal place of business in Torrance, California, was awarded a competitively bid contract on March 1, 1996, with GSA to provide security services at the Dulski building ("the contract"). The contract bid specifications for the contract included a provision, as required by 48 C.F.R. § 552.237–71, which granted GSA the right to

> require the Contractor [ISSI] to remove any employee(s) from GSA controlled buildings or other real property should it be determined that the individual(s) is either unsuitable for security reasons or otherwise unfit to work on GSA controlled property.

Contract at 37.[3]

ISSI maintains that federal law required the above provision be included in any

---

**3.** The contact bid specifications were included in the contract, a copy of which is attached as

contract bid specifications, and was not negotiable. The contract bid specifications also provided for health and physical fitness requirements including that all employees "shall possess binocular vision, correctable to 20/20 (Snellen)."[4] Both bid specifications were included in the final contract. Contract at 27 (Health and Physical Fitness Requirements), and 37 (The Role of Government Personnel and Responsibility for Contract Administration).

To maintain his eligibility for his security guard position, Hoehn was also required on a semi-annual basis to score a minimum of 220 points out of a possible 300 points on a firearms test. Hoehn maintains he consistently scored between 260 and 300 points on these tests over the course of the eight years that he was employed as a security guard at the Dulski building. In August 1996, Hoehn underwent the required recertification firearms test and physical examination for ISSI. The results of those tests were consistent with those of prior years. On a Certificate of Medical Examination completed by Dr. Mark Costanza on August 21, 1996 in connection with Hoehn's physical examination, Dr. Costanza checked a box next to the statement "No limiting conditions for this job" and wrote "Excluding one eye vision/depth perception." According to Hoehn, ISSI was, prior to August 1996, aware of his vision deficiency as a result of prior recertification tests and medical examination reports prepared by his previous employers. This certificate was sent to Mr. Soden, the security specialist representing GSA. On September 23, 1996, Soden both telephoned and wrote Clayton Willman, the ISSI Contract Manager in Albany, New York, advising him that Hoehn was unsui-

table for the security guard position based on his physical examination, and recommended Hoehn be removed from GSA sites. On September 30, 1996, ISSI terminated Hoehn on the basis that his lack of vision in his right eye rendered him physically unfit for the armed security guard/control center operator position. On October 1, 1996, Soden advised Willman that Hoehn was still working and should be removed. Willman then called the GSA office in Buffalo and had Hoehn removed.

Hoehn telephoned Soden on October 3, 1996 and requested reinstatement. Soden advised Hoehn to put that request in writing, and Hoehn complied, forwarding his request to Linda Piela, the Contracting Officer for the contract.

Meanwhile, Soden contacted Kevin Charron, the Federal Protective Services ("FPS") Branch Chief for Upstate New York and the Contracting Officer's Representative ("COR") for the contract. On October 17, 1996, at Charron's direction, Soden briefed John Ulianko, the FPS Director, regarding Hoehn's request for reinstatement. Ulianko denied the request and Soden, on October 18, 1996, spoke to Ben Moultrie, the acting Contracting Officer for the contract, regarding Hoehn's request for reinstatement which would require a contract waiver of medical requirements. Moultrie concurred with Ulianko that no waiver should issue, thereby rejecting Hoehn's request for reinstatement. Following his termination, Hoehn requested a copy of the Certificate of Medical Examination, and observed that the check mark in the box next to the statement "No limiting conditions for this job" was crossed out and the box underneath next

Exhibit A to Defendant's Notice of Motion, and as Exhibit H to Plaintiff's Notice of Motion.

4. The Snellen test for visual acuity was developed in 1862 by Dutch ophthalmologist Herman Snellen and is comprised of the familiar letter chart. The first figure in the Snellen score refers to distance between the viewer

and the visual target, typically 20 feet. The second corresponds to the distance at which a person with normal acuity could distinguish letters of the size that the viewer can distinguish at 20 feet. STEDMAN'S MEDICAL DICTIONARY, 27th ed. (2000), at 1650, 1813; R. Ausman & D. Snyder, MEDICAL LIBRARY, LAWYERS EDITION, vol. 9 (1992), § 21:34.

to the statement "Limiting conditions as follows" was checked. Upon questioning by Hoehn, Dr. Costanza denied altering the certificate.

Hoehn filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on October 18, 1996, alleging discrimination by ISSI on the basis of his disability in violation of the ADA. Specifically, Hoehn claimed that although he had, despite his disability, performed the essential functions of his security guard position successfully for more than eight years, ISSI nevertheless terminated his employment because of a failed physical examination. Hoehn maintains that he did not fail the physical examination, but, rather, the fraudulent alteration of the August 21, 1996 Certificate of Medical Examination resulted in his termination.

Hoehn, acting *pro se,* contacted GSA EEOC Counselor Victoria A. O'Dougherty on October 28, 1996, who instructed him to forward his EEOC complaint to EEOC officer Francis Meanor. Hoehn complied and, by letter dated December 3, 1996, Meanor informed Hoehn that his discrimination claim was dismissed and advised him of the administrative appeals process. On October 16, 1996, Hoehn, then represented by legal counsel, appealed the EEOC's dismissal of his charge.

A memorandum addressed to Meanor, prepared on October 29, 1996 by GSA EEO Counselor Vickie A. O'Dougherty contains references to conversations O'Dougherty had with several of Hoehn's supervisors.[5] In particular, Kenneth Grzelak, Physical Security Specialist assigned to Buffalo, stated that prior to Hoehn's removal, he was unaware Hoehn had eyesight in only one eye and Hoehn's work performance did not indicate any sight impairment. Donna Metz, Contact Guard Supervisor for Buffalo and Hoehn's former supervisor stated that she received a letter from Soden directing her to dismiss Hoehn

as Hoehn was not qualified to work under the contract between ISSI and GSA. Metz further indicated that "Mr. Hoehn was fine on the job" and that "[s]he never had a problem with his job performance." Plaintiff's Statement of Disputed Facts, Exhibit G, at 3–4. Moultrie, who was also questioned about the removal and denial of reinstatement, stated that such decision was consistent with the removal of several other contract security guards who also failed to meet the physical requirements for the armed security guard position.

In a Notice of Right to Sue issued on September 17, 1997, the EEOC stated it had found reasonable cause to believe that violations of Title VII, the ADA and the ADEA had occurred with respect to Hoehn's termination on September 30, 1996. Hoehn commenced the instant action on December 11, 1997.

## DISCUSSION

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no issue as to any material fact, and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.' Such a motion, whether or not accompanied by affidavits, will be 'made and supported as

---

**5.** A copy of the Memorandum is attached as Exhibit G to Plaintiff's Statement of Disputed Facts.

provided in this rule [FRCP 56],' and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56). Thus, "as to issues on which the non-moving party bears the burden of proof, the moving party may simply point out the absence of evidence to support the non-moving party's case." *Nora Beverages, Inc. v. Perrier Group of America, Inc.,* 164 F.3d 736, 742 (2d Cir.1998).

Once a party moving for summary judgment has made a properly supported showing as to the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor. *Goenaga v. March of Dimes Birth Defects Foundation,* 51 F.3d 14, 18 (2d Cir.1995). In opposing a motion for summary judgment a party "may not simply rely on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Goenaga, supra,* at 18 (citing cases).

In this case, ISSI moves for summary judgment dismissing Hoehn's ADA claim solely on the ground that Hoehn is not a "qualified individual with a disability" for purposed of the ADA. Defendant's Memo-

randum at 4–8. Hoehn argues in opposition to summary judgment that genuine issues of material fact exist as to whether he is a "qualified individual with a disability" under the ADA, precluding summary judgment.[6]

The term "disability," as relevant to the ADA, means:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).

EEOC regulations regarding the ADA define major life activities as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(h)(2)(*l*) (2000). In the instant case, the court need not determine whether Hoehn had an impairment based solely on the fact that he had monocular vision as ISSI has, for the purpose of the instant motion, conceded that Hoehn's monocular vision constitutes a disability under the ADA.[7] Defendant's Memorandum at 4, n. 4. The ADA, however, protects Hoehn only if he is a "qualified individual with a disability," 42 U.S.C. § 12112(a), which is defined as

an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of

---

**6.** Although discovery in this action has not concluded, ISSI maintains that discovery is not required to determine the issue before the court on summary judgment. Defendant's Memorandum at 2 n. 1. Hoehn does not argue otherwise nor has he moved pursuant to Fed.R.Civ.P. 56(f) for a period of discovery necessary to permit him to oppose summary judgment.

**7.** The Supreme Court recently held that whether monocular vision was a disability as defined under the ADA must be determined on a case-by-case basis in consideration of such "mitigating measures" as "artificial aids, like medications and devices," and the

ability to develop "subconscious mechanisms for coping with visual impairments." *Albertson's, Inc. v. Kirkingburg,* 527 U.S. 555, 563–65, 119 S.Ct. 2162, 2168–69, 144 L.Ed.2d 518 (1999). As Defendant has conceded, for the purpose of this motion, that Hoehn's monocular vision is a disability as defined under the ADA, Defendant has neither specifically addressed whether Hoehn's monocular vision qualifies as a disability based on its limiting effect on Hoehn's major life activities, nor challenged Hoehn's allegation that he was subjected to a discriminatory discharge based on the perception that his monocular vision is a disabling condition.

the employment position that such individual holds....

42 U.S.C. § 12111(8).

A "qualified individual with a disability" is further defined under the EEOC regulations as one

who satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires, and who, with or without reasonable accommodation can perform the essential functions of such position.

29 C.F.R. § 1630.2(m).

The term "reasonable accommodation" may include—

job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9)(B).

In support of summary judgment, ISSI argues that Hoehn is not a qualified individual with a disability under the ADA for several reasons. Defendant's Memorandum at 4–6. First, ISSI asserts that Hoehn does not meet the physical requirements for the security guard position as he does not "possess binocular vision, correctable to 20/20 (Snellen)," as required under the contract. Id. at 5–6. Second, ISSI contends GSA is, pursuant to the contract and the relevant federal regulation, authorized to require ISSI to remove any employee who "is either unsuitable for security reasons or otherwise unfit to work on GSA controlled property." Id. at 5 (citing 48 C.F.R. § 552.237–71). Third, ISSI argues both contract provisions establishing the vision requirement and vesting the authority to direct the removal of employees with the GSA contracting officer are non-negotiable provisions with which ISSI was obligated to comply. Id. at 6.

In support, ISSI relies on *Albertson's Inc. v. Kirkingburg,* 527 U.S. 555, 563–65, 119 S.Ct. 2162, 2168–69, 144 L.Ed.2d 518 (1999). In *Kirkingburg,* a commercial truck driver whose uncorrectable 20/200 vision in his left eye rendered him essentially with monocular vision, sued his former employer under the ADA for discriminatory discharge. The employer argued the discharge resulted from its obligation to comply with a Department of Transportation ("DOT") regulation requiring all commercial truck drivers possess corrected distant vision acuity of at least 20/40 in each eye. *Kirkingburg, supra,* at 2165–66. The Supreme Court held that as the employer was entitled to rely on the DOT regulation in defining the essential job functions of the commercial truck driver position, the discharge of the plaintiff who did not meet the federally regulated distant vision acuity standard did not give rise to a violation of the ADA. *Id.,* at 2169–70 (citing 42 U.S.C. § 12111(8)). The Court further held that although the truck driver had received a waiver of the physical vision requirement, the employer was not required to accept such waiver as a reasonable accommodation as part of an experiment designed to assist any government agency in gathering empirical data as part of an experimental study intended to provide the agency with a factual basis for reconsidering the existing standards and, as such, the employer was obligated to follow a federal regulation which, based on safety considerations, established a distance visual acuity standard for truck driving positions. *Id.* at 2170–71, 2173–74. ISSI urges this court to find that, applying *Kirkingburg,* and given Hoehn's undisputed monocular vision which rendered him unable to meet the physical requirements for the job as stated in the contract and was the basis for GSA's decision that Hoehn was unfit to work as a security guard, Hoehn is not a "qualified individual with a disability" under the ADA. Defendant's Memorandum at 7–8.

Hoehn argues, however, that unlike the facts in *Kirkingburg*, in the instant matter, the relevant vision acuity requirement is not mandated by any federal regulation or statute, but, rather, is a contract provision. Plaintiff's Memorandum at 6–8. Hoehn contends that the "mere act of entering into a contract which denies employment opportunities based on disability violates the ADA." *Id.* According to Hoehn, the contract provisions that establish the vision acuity requirement and that grant sole authority to remove an employee with the GSA Contracting Authority, denies employment opportunities based on disability in violation of the ADA. *Id.* Hoehn further asserts that the reason given by ISSI for terminating his employment is merely a pretext for a discriminatory job action based on disability in violation of the ADA. *Id.* at 10–11. In particular, Hoehn maintains his employment record as a security guard demonstrates that the contract's vision requirement could have been waived or modified if ISSI were willing to do so and, by signing such a waiver, ISSI would not be violating any federal regulation, but, rather, would have allowed Hoehn to work as a qualified individual with a disability as defined in the ADA. *Id.* According to Hoehn, ISSI's failure to provide such a waiver demonstrates that ISSI's true reason for discharging him was to protect its business interest in maintaining its contract with GSA, rather than any question as to Hoehn's ability to perform his job. *Id.* at 11.

ISSI further argues that the terms of the contract were not negotiated between ISSI and GSA; rather, bidding for the contract was conducted through sealed bids which required the submission of bids in accordance with the bid specifications. Defendant's Reply Memorandum at 3–4. As noted, such specifications included physical requirements for the job, including a minimum vision acuity requirement and a provision entitling GSA to request the contractor to remove any employee determined to be "unfit." *Id.* ISSI further contends that only the Contacting Officer

of the GSA, in this case, Moultrie, was "authorized to take actions on behalf of the Government to amend, modify or deviate from the contract terms, conditions, requirements, [etc.]." *Id.* at 4 (citing Contract, at 37). As such, ISSI maintains that it could not alter any terms of the contract to accommodate Hoehn's request that the vision acuity requirement be waived allowing his reinstatement. *Id.* at 4. ISSI does not contend GSA or its contractors are exempt from the protections offered by the ADA. *See* 3 U.S.C. § 403 (extending rights and protections of ADA to all executive offices).

█  Here, the record and applicable statutes and regulations demonstrate that genuine issues of material facts exist as to whether Hoehn was a "qualified individual with a disability" under the ADA, notwithstanding the contractual provisions cited by ISSI, precluding the court from granting summary judgment to either party.

Significantly, in the instant case, ISSI neither claims nor offers evidence that Hoehn was unable to perform the essential functions of the security guard position. Rather, as stated, ISSI moves for summary judgment on the ground that Hoehn is not a "qualified individual with a disability" under the ADA as, according to ISSI, Hoehn's uncorrectable monocular vision renders him "unfit" for his job because Hoehn is not able to meet the stated health and physical fitness requirements for the job as stated in its contract with GSA, and that ISSI was bound under the terms of the contract to comply with GSA's direction that Hoehn be fired. However, ISSI may not invoke contractual obligations to avoid ADA liability as the ADA expressly forbids an employer from

> participating in a contractual or other arrangement or relationship that has the effect of subjecting a covered entity's qualified applicant or employee with a disability to the discrimination prohibited.

42 U.S.C. § 12112(b)(2).

As such, the mere fact that ISSI may have been contractually bound to enforce a GSA

mandated contract provision regarding visual acuity and vesting with the GSA Contracting Officer sole authority to deviate from the terms of that provision, does not dispense with the necessity of determining whether Hoehn was a "qualified individual with a disability" as defined under 42 U.S.C. § 12111(8) and 29 C.F.R. § 1630.2(m). Thus, whether the contractual provisions asserts by ISSI violate § 12111(b)(2) presents a triable issue of fact.

Further, the term "discriminate" as used in the ADA includes

> [the use of] qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position in question and is consistent with business necessity.

42 U.S.C. § 12112(b)(6).
In this case, Hoehn was found "unfit," under the terms of the ISSI's contract with GSA, for the armed security guard/control center operator solely as a result of a physical examination following which the examining physician issued a medical certificate on which Hoehn's lack of vision in his right eye was noted. However, as ISSI's position in support of summary judgment is limited to its assertion that its contractual obligations alone prevent Hoehn from being considered a "qualified individual with a disability," ISSI has made no showing that the contract provision requiring that employees "possess binocular vision, correctable to 20/20 (Snellen)," was both job-related to the armed security guard/control center operator position, and that it was consistent with business necessity. Significantly, binocular vision is not listed as a requirement for the firearms certification component of the armed security guard position, Contract Exhibit 6, p. 149, and ISSI does not contend otherwise. That Hoehn successfully

performed his job duties for eight years prior to his termination by ISSI, along with statements by his former supervisors that Hoehn's job performance was at all times satisfactory, at least demonstrates a genuine issue of material fact as to whether the visual acuity requirement contained in the contract was either "job-related" or "consistent with business necessity."

Additionally, the reasonable modification or accommodation sought by Hoehn was a waiver of the physical requirement that he "possess binocular vision, correctable to 20/20 (Snellen)." As stated, the ADA's prohibition against "participating in a contractual or other arrangement or relationship that has the effect of subjecting a covered entity's qualified applicant or employee with a disability to the discrimination prohibited," 42 U.S.C. § 12112(b)(2), precludes ISSI from avoiding being held in violation of the ADA based on the fact that ISSI was unable, under the terms of the contract, to grant the requested waiver. Dr. Costanza's alleged denial that he altered the medical certificate to suggest Hoehn suffers from a physical limitation relevant to his fitness to perform his job reinforces the existence of a material fact question relevant to Hoehn's claim that ISSI violated the ADA.

The gravamen of *Kirkingburg* is that an employer's refusal to hire for a commercial interstate truck driving job an individual on the ground that he did not possess binocular vision correctable to a specified degree as mandated under a federal regulation did not constitute a violation of the ADA because the legislative history of the subject regulation demonstrated the regulation was based on considerations of the general public's safety. *Kirkingburg, supra,* at 2171–72. Furthermore, legislative history established that Congress, in enacting the ADA, recognized that federal safety regulations would, as a matter of law, restrict the application of the ADA. *Id.* at 2172–73. No similar expression of Congressional intent rendering the ADA

inapplicable to Hoehn's alleged disability is asserted by ISSI.

■ In contrast, ISSI relies on a federal regulation which vests the authority to either enforce or waive a contractual provision mandating binocular vision correctable to 20/20 (Snellen) with the GSA contracting officer. However, such vision acuity requirement is not the equivalent of a federal statute or regulation merely because it was included in a contract between ISSI and a government agency, the enforcement of which was, pursuant to a federal regulation, within the exclusive control of the government agency. Notably, ISSI does not argue that it did not enter into the contract with GSA voluntarily or that it could not have sought a modification of the specifications to avoid potential violations of the ADA.

Furthermore, unlike *Kirkingburg, supra,* there has been no showing that the visual acuity requirements from which Hoehn seeks a waiver were adopted out of concern for the safety of the general public. *See Kirkingburg, supra,* at 2172–73 (observing that the relevant DOT regulation was adopted to ensure safe operation of commercial trucks and that Congress, upon enacting the ADA, "recognized that federal safety rules would limit application of the ADA as a matter of law.").[8] Nor is there any evidence that the waiver Hoehn sought was, like the waiver at issue in *Kirkingburg,* part of an experiment designed to assist any government agency in gathering empirical data as part of an experimental study intended to provide the agency with a factual basis for reconsidering the existing standards. *Kirkingburg, supra,* at 2173–74.

To summarize, if Hoehn can demonstrate he was able to perform the essential functions of the security guard/control center operator position such that he would have been permitted to retain his position but for the contractual provisions that re-

quired him to "possess binocular vision, correctable to $20/20$ (Snellen)," and if ISSI is unable to demonstrate that meeting the vision acuity requirement as provided for in the contract is job-related to the position and a matter of business necessity, then Hoehn is a "qualified individual with a disability" and entitled to the protection of the ADA. As discussed, the fact that ISSI's contract with GSA placed authority to amend, modify or waive the visual acuity provision in the GSA creates no immunity for ISSI from liability for a violation of the ADA.

■ As material issues of fact thus exist as to whether Hoehn is a qualified individual under the ADA, ISSI's motion for summary judgment should be DENIED. Further, even if ISSI could show that binocular vision is a valid job related requirement, *i.e.,* that such vision "is shown to be job-related for the position in question and is consistent with business necessity," 42 U.S.C. § 12112(b)(6), a material issue of fact remains as to whether Hoehn, "with or without reasonable accommodation, can perform the essential functions of the employment position." 42 U.S.C. § 12112(a). The court notes that binocular vision is not a *sine qua non* as to whether an individual possesses the essential skills to satisfactorily perform a job that involves quick-thinking and swift physical reaction time. *See Neeld v. American Hockey League,* 439 F.Supp. 459, 462 (W.D.N.Y.1977) (granting preliminary injunction enjoining defendant hockey league from applying league regulation establishing minimum visual acuity requirements to plaintiff, a one-eyed professional hockey player who, despite impaired peripheral vision, demonstrated that "his visual handicap did not substantially detract from his skill and ability to play hockey in a competent and proficient manner.").

---

**8.** Any similar public safety considerations that may be present in this case are triable issues of fact.

## CONCLUSION

Based on the foregoing, Defendant's motion for summary judgment (Docket Item No. 42) should be DENIED; Plaintiff's motion that Defendant's summary judgment motion be denied (Docket Item No. 45) should be DISMISSED as moot.

Sept. 22, 2000.