Andrew J. EGRI, Edward Munster and Neighbors Opposed to Residential Atomic Dumps

v.

CONNECTICUT YANKEE ATOMIC POWER COMPANY, Town of Haddam Board of Selectmen and Alan Paskewich, In His Capacity as Town of Haddam Building Official

No. 3:02CV400 (AHN).

United States District Court, D. Connecticut.

June 20, 2002.

Nancy Burton, Redding Ridge, CT, for Plaintiff.

Joseph L. Hammer, Allan B. Taylor, John B. Nolan, Michael P. Shea, Alexander G. Filotto, Day, Berry & Howard, Hartford, CT, for Defendant.

*Ruling on Motion for Summary Judgment*

NEVAS, District Judge.

Currently pending before the court is the motion of Defendant Connecticut Yankee Atomic Power Company for summary judgment.[1] For the following reasons, Defendant's motion for summary judgment [doc # 22] is GRANTED.

*Factual and Procedural History*

The current action evolved out of a related action, *Connecticut Yankee Atomic Power Company v. Town of Haddam, et al.,* 3:01cv2178(AHN)(the "Related Action"), brought by defendant Connecticut Yankee Atomic Power Company ("Connecticut Yankee") against the Town of Haddam, the Town of Haddam Board of Selectmen (the "Selectmen"), Cynthia Williams, in her capacity as the Town of Haddam Zoning Enforcement Officer, and

---

1. Defendants Town of Haddam and Alan Paskewich moved to adopt the motions made by Connecticut Yankee, including this motion for summary judgment. The Court granted the Motion to Adopt [doc. # 41] on March 20, 2002.

Alan Paskewich, in his capacity as the Town of Haddam Building Official. In the Related Action, Connecticut Yankee sought to further its plan to transfer spent nuclear fuel and other radioactive waste to a dry cask independent spent fuel storage installation (the "ISFSI") to be constructed at a site located on Connecticut Yankee's 500 acre federally-licensed property in Haddam, Connecticut (the "Property"). The waste is currently stored in a wet pool system located adjacent to the reactor building on the Property.

The parties to the Related Action participated in settlement negotiations with the assistance and supervision of United States Magistrate Judge Holly Fitzsimmons and reached a tentative settlement agreement in mid-January, 2002 (the "Agreement"). Prior to voting on whether to accept the Agreement, the Selectmen noticed and held a public meeting at a local high school on January 22, 2002. Many Haddam residents, including Plaintiffs Egri and Munster, attended the meeting. The purpose of the meeting was to present the Agreement to the public and give the public an opportunity to ask questions and offer comments on the Agreement. The Selectmen noticed and held a second public meeting the following day, January 23, 2002. After receiving additional public comment, the Selectmen voted to approve the Agreement. The parties then executed and filed with the Court a proposed Order on Consent of Parties (the "Order"), setting forth the terms of the settlement. The Court entered the Order on January 29, 2002.

According to the Order, Connecticut Yankee can proceed with the construction, implementation and operation of the ISFSI on the site selected by Connecticut Yankee and Haddam must issue a building permit for the facility and related improvements. Haddam issued the permit on January 29, 2002. The Order also requires Connecticut Yankee to make certain payments to Haddam. Connecticut Yankee has begun making these payments.[2]

In addition, the Order directs that (1) "Defendants consent to the entry by this Court of a permanent injunction enjoining Defendants, and all other persons acting in concert with them or pursuant to their direction, from acting in any way to prevent, impede, interfere with or delay Connecticut Yankee's construction, implementation or operation of the ISFSI, and such injunction is hereby ordered" (Order ¶ 3); and (2) "[t]his Court will retain jurisdiction to adjudicate all disputes of any nature arising from the interpretation or enforcement of the Order entered herein, and no such dispute may be raised or adjudicated in any other forum except by written agreement of all of the parties." (Order ¶ 8).

On February 27, 2002, just prior to the Order becoming final and non-appealable, Mr. Egri moved to intervene in the Related Action and also sought a revocation of the building permit by directing an appeal to the Haddam Building Board of Appeals. Although his motion for intervention had not been acted upon, Mr. Egri filed on February 28, 2002 a Motion for Reconsideration and to Vacate Order and for Stay of Order. He also filed a Notice of Appeal of the Order.[3] On that same day, Mr. Egri's counsel filed a Motion to Intervene on behalf of a number of other parties.

---

**2.** The Court is aware of at least an initial payment of $800,000 to Haddam.

**3.** When asked at a subsequent hearing, Mr. Egri's counsel was unable to provide a satisfactory answer to the following question posed by the court: "What standing did you have to file a notice of appeal in a case in which you were not a party?" Transcript of Conference on Application for Temporary Restraining Order, March 5, 2002, at 4–6.

Mr. Egri, along with Plaintiffs Edward Munster and Neighbors Opposed to Residential Atomic Dumps ("NORAD"), filed this current action (the "Current Action"), along with applications for a temporary injunction and order to show cause, in the Connecticut Superior Court for the Judicial District of Middlesex seeking to vacate and nullify the building permit issued pursuant to the Order; enjoin Connecticut Yankee from constructing the ISFSI in a residential zone; declare null and void the Agreement entered into by the parties in the Related Action and enjoin any conduct pursuant to the Agreement; and enjoin Connecticut Yankee from constructing an ISFSI without first obtaining a Certificate of Environmental Compatibility and Public Need from the Connecticut Siting Council. The complaint alleged that: 1) the building permit was issued in violation of state law and Haddam's zoning regulations; 2) Haddam lacked authority to enter into the Agreement because it required issuance of the building permit in violation of state and local zoning laws; 3) Haddam lacked authority to enter into the Agreement embodied in the Order because the "Town purported to bind" all town residents to the terms of the Order and the Order violates the residents' First Amendment rights; 4) Haddam lacked authority to settle the Related Action on the ground that it was "brought in bad faith and lacked probable cause"; and 5) Connecticut Yankee may not construct the ISFSI as contemplated by the Order on the ground that it has not obtained a Certificate of Environmental Compatibility and Public Need from the Connecticut Siting Council as state law requires. Plaintiffs subsequently amended their complaint, withdrawing the First Amendment claim and the need for the Connecticut Siting Council certificate.

Plaintiffs allege that they have standing to bring this action because they are "aggrieved by the issuance of the building permit." (Plaintiffs' Complaint, dated March 15, 2002, ¶ 21) Specifically, Plaintiffs claim that they own property abutting or near Connecticut Yankee's property and that their property is subject to devaluation and nuisance conditions created by the construction activities associated with the ISFSI. NORAD claims to represent members whose property adjoins or is near the Connecticut Yankee property.

On March 5, 2002, Connecticut Yankee removed the Current Action to this Court pursuant to the All Writs Act, 28 U.S.C. § 1651, 28 U.S.C. § 1331 and the general removal statute 28. U.S.C. § 1441. Connecticut Yankee contemporaneously filed Motions for a Temporary Restraining Order ("TRO") and an Order to Show Cause. Following a hearing held the same day, the Court entered the TRO and signed the Order to Show Cause, which required the Plaintiffs to appear on March 15, 2002 to show cause why a preliminary injunction should not be entered against the plaintiffs pursuant to the All Writs Act.[4] Connecticut

---

4. The TRO, effective for 10 days, granted the following relief:

(a) Plaintiff Andrew J. Egri is hereby restrained from prosecuting or proceeding with the Appeal or from taking any other action that challenges the validity of, or impairs or interferes with implementation of, the Building Permit;

(b) The Town of Haddam and the Board of Appeals is hereby restrained from hearing, adjudicating or otherwise acting upon Plaintiff's appeal; and

(c) Plaintiffs, their successors, assigns, agents and attorneys, and all persons with notice of the Temporary Restraining Order, are hereby restrained from taking any action that challenges the validity of, or delays, prevents, impairs or interferes with implementation of the Building Permit or Connecticut Yankee's construction, implementation or operation of the ISFSI, other than by a direct appeal of this Court's Order or other Filings in this or the Related Action.

Yankee subsequently filed Motions for Preliminary and Permanent Injunctions against the Plaintiffs.

The Court took up the previously described matters in a hearing on March 15, 2002, along with Plaintiffs' motion to remand and several motions for protective orders and to quash various subpoenas. At that time the Court denied the motion to remand and the motions to quash subpoenas and for protective orders.[5] The Court also entered an order granting a Permanent Injunction enjoining certain activities of the "Plaintiffs, their successors, assigns, agents and attorneys, and all persons with notice of the permanent injunction."[6] Order Granting Permanent Injunction, *Egri v. Connecticut Yankee Atomic Power Co., et. al.*, 3:02CV400(AHN), dated March 15, 2002.

## DISCUSSION

### I. The Court's Jurisdiction

 As a threshold matter, the Court will address the issue raised by Plaintiffs of whether it has subject matter jurisdiction to adjudicate the Current Action. Plaintiffs challenge the jurisdiction of the Court arguing that the All Writs Act can-

not create jurisdiction where none previously existed. Plaintiffs are wrong in their understanding of both the All Writs Act and the underlying jurisdictional basis of this action. The All Writs Act gives this Court the authority to remove an action from state court in order to protect the integrity of its Order. *See* 28 U.S.C. § 1651 ("The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."); *Yonkers Racing Corp. v. City of Yonkers*, 858 F.2d 855, 865 (2d. Cir.1988); *Lucas v. Planning Bd.*, 7 F.Supp.2d 310, 318 (S.D.N.Y.1998). Furthermore, jurisdiction would lie in this Court based on the claims alleged in the complaint. Those claims arise under federal law because each requires interpretation of and/or launches a challenge against the Agreement contained in the Order, which constitutes a "law of the United States" for purposes of 28 U.S.C. § 1331.

### II. Summary Judgment

 In a motion for summary judgment, the moving party bears the burden

---

Temporary Restraining Order, *Egri v. Connecticut Yankee Atomic Power Co., et. al.*, 3:02CV400(AHN), dated March 5, 2002.

5. At the same hearing, the Court denied motions to intervene in the Related Action by Andrew Egri, Neil W. Sheridan, John D. Karle III, and the Connecticut River Watershed Council, Inc. (the "Movants"). The Court also denied the Movants' Motion for Reconsideration of the January 29, 2002 Order on Consent of Parties.

6. The Permanent Injunction contains prohibitions similar to those of the TRO, specifically:

1. Plaintiff Andrew Egri is hereby permanently enjoined from prosecuting or proceeding with the Appeal [to the Town of Haddam Building Board of Appeals], or from seeking any judgment or administrative ruling that would invalidate or other-

wise interfere with implementation of the Building Permit;

2. The Town of Haddam and the Building Board of Appeals are hereby permanently enjoined from hearing, adjudicating or otherwise acting upon Mr. Egri's Appeal; and

3. Plaintiffs, their successors, assigns, agents and attorneys, and all persons with notice of the permanent injunction, are hereby permanently enjoined from seeking any judgment or administrative ruling that would invalidate or otherwise interfere with the implementation of the Order, including the Building Permit issued thereunder, other than by a direct appeal of this Court's Order or other filings in this action or in the Related Action.

Order Granting Permanent Injunction, *Egri v. Connecticut Yankee Atomic Power Co., et. al.*, 3:02CV400(AHN), dated March 15, 2002.

of establishing that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P.; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (plaintiff must present affirmative evidence in order to defeat a properly supported summary judgment motion).

Summary judgment is appropriate when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he as the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23, 106 S.Ct. 2548; *see also, Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir.1995) (movant's burden satisfied if it can point to an absence of evidence to support an essential element of nonmoving party's claim).

The Court must resolve "all ambiguities and draw all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." *Aldrich v. Randolph Cent., Sch. Dist.*, 963 F.2d 520, 523 (2d. Cir.), *cert. denied*, 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). *See also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir.1992). If the nonmoving party submits evidence that is "merely colorable," or is not "significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505. A mere suggestion of evidence in support of plaintiff's position will not suffice. *Id.* at 252, 106 S.Ct. 2505; *Hale Propeller, L.L.C. v. Ryan Marine Products Pty., Ltd.*, 151 F.Supp.2d 183, 186 (D.Conn.2001)("The non-moving party bears the burden of coming forward with sufficient evidence to negate the movant's position and to show the existence of genuine issues of material fact."). Unsupported assertions and conclusions of the nonmoving party are not enough to overcome a well-pleaded summary judgment motion. *Tunnell v. United Techs. Corp.*, 54 F.Supp.2d 136, 139 (D.Conn.1999); *Lamontagne v. E.I. DuPont de Nemours & Co.*, 834 F.Supp. 576, 580 (D.Conn.), *aff'd*, 41 F.3d 846 (2d Cir.1994).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505; *See generally* 10A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* S 2725, pp. 93–95 (1983).

In addition to the requirements of Rule 56 of the Federal Rules of Civil Procedure, parties to a summary judgment motion must adhere to the Local Rules of the District of Connecticut. Rule 9(c) of the Local Rules governs summary judgment motions. Local Rule 9(c)(1) requires the moving party to submit a "separate, short, and concise statement of material facts which are not in dispute." Local Rule 9(c)(2) places a similar burden on the party opposing the motion. The nonmoving par-

ty must state "whether each of the facts asserted by the moving party is admitted or denied" and include a "separate, short and concise statement of material facts as to which it is contended that there exists a genuine issue to be tried." Local Rule 9(c)(3) further requires that "[e]ach statement of material fact in a Local Rule 9(c) Statement by a movant or opponent must be followed by a citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial." Local Rule 9(c)(1) makes clear that the facts set forth by the moving party in its statement shall be deemed admitted unless controverted by the nonmoving party in its 9(c)(2) statement. *See Mr. & Mrs. A v. Weiss,* 121 F.Supp.2d 718, 721 (D.Conn.2000).

Plaintiffs have failed to comply with the standards set forth in the Local Rules for a 9(c)(2) statement. Plaintiffs do submit in their statement a section purported to be "a list of each issue of material fact as to which it is contended there is a genuine issue to be tried"; however, Plaintiffs have not supported this "statement of material fact[s]" with the citations and evidentiary support required by Local Rule 9(c)(3). This statement cannot serve as a proper basis to oppose a summary judgment motion. Moreover, the alleged genuine issues of material fact identified by the Plaintiffs are nothing more than legal conclusions or propositions and do not suffice to raise legitimate, genuine issues of material fact. Likewise, the denials and assertions of lack of knowledge advanced in the first part of the 9(c)(2) statement fail to controvert any material fact or create genuine issues of material fact; rather, they dispute or deny knowledge of matters that have been established by documents in the record or of which the Court may take judicial notice.

"The submission of legal argument and conclusions of law, rather than a 'separate, short and concise statement of material facts,' and the failure to admit or deny the statements set forth by the moving party do not serve the purpose of Local Rule 9." *Mr. & Mrs. A,* 121 F.Supp.2d at 721. A 9(c)(2) statement that is not in compliance with the Local Rules is the equivalent of no filing at all and is sufficient reason to grant summary judgment in favor of Defendants on all claims and and counter claims. *See Dusanenko v. Maloney,* 726 F.2d 82, 84 (2d. Cir.1984) (no filing in compliance with local rule; grant of summary judgment); *Scianna v. McGuire,* No. 3:94CV761(AHN), 1996 WL 684400, at *2 (D.Conn. March 21, 1996) ("The court notes that the plaintiff's failure to comply with the court's rules concerning the appropriate way to oppose the defendants' motion for summary judgment is sufficient reason alone to accept the defendants' list of material facts as undisputed."). The Court therefore grants Connecticut Yankee's Motion for Summary Judgment.

■ The Court would like to address briefly the issue of Plaintiffs' standing to bring this action. As noted previously, Plaintiffs are two individuals and an organization, NORAD, which claims to be comprised of residents of Haddam and surrounding communities. The Court finds that none of these Plaintiffs have standing to bring this suit.

Contrary to their initial claims, Mr. Egri and Mr. Munster do not own property which "abuts or is within immediate proximity of [Connecticut Yankee's] property." (Plffs. Mem. at 1–2.) This factual error became clear at the March 15, 2002 injunction hearing. Mr. Egri conceded that his property is approximately one mile from the ISFSI.[7] Mr. Munster lives across the

---

7. Mr. Egri was under the mistaken belief that Connecticut Yankee was under common own-

ership with the Connecticut Light and Power Company, which his property does adjoin.

Connecticut River from the ISFSI. In fact, Mr. Munster's property will be farther from the ISFSI than from the current location of the spent fuel. Under the law of standing a plaintiff must have suffered a "concrete and particular" injury.[8] *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Neither Mr. Egri nor Mr. Munster have articulated any "concrete and particular" injury he has suffered. When pressed on this issue at the March 15, 2002 injunction hearing, both stated their objections were with what they perceived as violations of the land use regulations. These concerns regarding the land use laws are "general" objections, not the specific harm required to maintain standing. *See id.* at 573–74, 112 S.Ct. 2130 (no standing where plaintiff raises "only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws."). Thus, Mr. Egri and Mr. Munster have failed to meet their burden of establishing standing to bring and maintain this action.

■ NORAD likewise fails to establish standing. As described by Neil Sheridan, NORAD, to the extent that it does exist, is an informal group with no bylaws, membership or other indicia of actual organization. *See* Sheridan Dep. Tr. at 16–21, attached as Exhibit B to Connecticut Yankee's Reply To Plaintiffs' Memorandum In Opposition To Defendant Connecticut Yankee Atomic Power Company's Motion For Summary Judgment. Even disregarding its questionable existence, the organization does not have standing to bring this suit.

An organization can assert standing on its own behalf or on behalf of its members. *See Havens Realty Corp. v. Coleman,* 455

U.S. 363, 379 n. 19, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982). When the organization attempts to establish standing on its own behalf, it must meet the same standards required of an individual asserting standing. NORAD does not and cannot allege that it has suffered any particularized harm or injury. Instead, it asserts that it has representational or associational standing, that is, standing on behalf of its members. An association or organization may bring a suit on behalf of its members when: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Adver. Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). NORAD tries to base its "associational standing" on the harm to member Neil Sheridan. With respect to standing, Mr. Sheridan suffers the same shortcomings as Mr. Egri and Mr. Munster. His property does not adjoin the Connecticut Yankee property. It is nearly a mile away from the ISFSI. Mr. Sheridan would not "have standing to sue in [his] own right"; therefore, NORAD may not rely on him to establish standing. Because NORAD fails the first prong of the associational standing test, it cannot establish standing and the Court need not analyze the other prongs of the test.

Accordingly, summary judgment should be granted in favor of defendants because 1) plaintiffs have not properly opposed the motion for summary judgment and 2) plaintiffs lack standing to bring and maintain this action.

---

**8.** In addition, there must be a causal connection between the injury and the challenged activity, and the injury must be susceptible of being addressed by a favorable decision. *Lujan,* 504 U.S. at 561, 112 S.Ct. 2130.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment [doc. # 22] is hereby GRANTED.