In re Andrew J. EGRI, Neil W. Sheridan, John D. Karle III, Connecticut River Watershed Council, and Stanford Brainerd, Appellants,

Connecticut Yankee Atomic Power Co. Plaintiff–Appellee,

v.

Town of Haddam, Town of Haddam Board of Selectmen, Cynthia Williams, Town of Haddam Zoning Enforcement Officer, and Alan Paskewich, Town of Haddam Building Official, Defendants–Appellees.

In re Andrew J. Egri, Neil W. Sheridan, John D. Karle III, Connecticut River Watershed Council, and Stanford Brainerd, Appellants,

Connecticut Yankee Atomic Power Co., Plaintiff–Appellee,

v.

Town of Haddam, Town of Haddam Board of Selectmen, Cynthia Williams, Town of Haddam Zoning Enforcement Officer, and Alan Paskewich, Town of Haddam Building Official, Defendants–Appellees.

Andrew J. Egri, Edward W. Munster, and Neighbors Opposed to Residential Atomic Dumps, Plaintiffs–Appellants,

v.

Connecticut Yankee Atomic Power Co., Town of Haddam Board of Selectmen, and Alan Paskewich, Town of Haddam Building Official, Defendants–Appellees,

Thomas R. Gerarde, David Warmsley, Douglas R. Jones, Connecticut River Watershed Council, and Neil W. Sheridan, Movants.

In re Nancy Burton, Contemnor–Appellant.

Andrew Egri, Edward W. Munster, and Neighbors Opposed to Residential Atomic Dumps, Plaintiffs–Appellants,

v.

Connecticut Yankee Atomic Power Co., Town of Haddam Board of Selectmen, and Alan Paskewich, Town of Haddam Building Official, Defendants–Appellees,

Thomas R. Gerarde, David Warmsley, Douglas R. Jones, Connecticut River Watershed Council, and Neil W. Sheridan, Movants.

Docket Nos. 02–7227, 02–7653, 02–7703, 02–7751 and 02–9020.

United States Court of Appeals, Second Circuit.

July 1, 2003.

Nancy Burton, Redding Ridge, CT, for Appellants.

Allan B. Taylor (John B. Nolan, of counsel), Day, Berry & Howard LLP, Hartford, CT, for Connecticut Yankee Atomic Power Co.

Thomas R. Gerarde (John J. Radshaw, III, of counsel), Hartford, CT, for Town of Haddam.

PRESENT: WINTER, MCLAUGHLIN and CABRANES, Circuit Judges.

### SUMMARY ORDER

THIS SUMMARY ORDER WILL NOT BE PUBLISHED IN THE FEDERAL REPORTER AND MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY TO THIS OR ANY OTHER COURT, BUT MAY BE CALLED TO THE ATTENTION OF THIS OR ANY OTHER COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, Foley Square, in the City of New York, on the 1st day of July, two thousand and three.

UPON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgments of said District Court be and hereby are **AFFIRMED**.

All of the related appeals consolidated here were filed by attorney Nancy Burton on behalf of clients seeking to challenge a consent agreement entered into between Connecticut Yankee Atomic Power Company ("Connecticut Yankee") and the Town of Haddam ("Town"). Because all of the five consolidated appeals arose from relat-

ed proceedings before the district court, this Court has chosen to consider them together.

These cases arise from Connecticut Yankee's plan to transfer spent nuclear fuel and other radioactive waste to a site to be constructed on property in the Town of Haddam. In November 2001, Connecticut Yankee brought suit against the Town for injunctive and monetary relief, seeking to compel the Town to allow Connecticut Yankee to construct an Independent Spent Fuel Storage Installation ("ISFSI") on a portion of its property that the Town had zoned for residential use only.[1] *See Connecticut Yankee Atomic Power Co. v. Town of Haddam*, No. 02–cv–2178 (D.Conn.).

The parties entered settlement negotiations in December 2001, with the Town represented by three Selectmen and the Town's counsel. On January 22 & 23, 2002, the Selectmen held public hearings to inform town residents of the proposed settlement, and, following these meetings, entered into the agreement. The agreement was memorialized by a district court order entered on January 29, 2002. By its terms, the agreement provided that "Defendants consent to entry by [the district court] of a permanent injunction enjoining Defendants, and all other persons acting in concert with them or pursuant to their direction, from acting in any way to prevent, impede, interfere with or delay Connecticut Yankee's construction, implementation, or operation of the ISFSI, and such injunction is hereby ordered."

On February 27, 2002, Burton, on behalf of Egri, a non-party resident of the Town, filed motions in district court to intervene in the suit and for reconsideration of the consent order. The following day, Burton filed a notice of appeal from the consent order itself naming Egri as the appellant. This Court opened No. 02–7227 for that appeal.

In the following days, Burton filed motions seeking the same relief on behalf of several other individuals and the Connecticut River Watershed Council. After a hearing, the district court denied all of the motions to intervene and for reconsideration as untimely, noting that, despite notice of the underlying lawsuit from its inception, the movants did not seek to intervene in the suit until well after the parties had reached a settlement. Later, the court denied a motion for reconsideration of the denial of the motion to intervene. Two notices of appeal were filed from these various orders, and this Court opened Docket Nos. 02–7653 and 02–7703 for the appeals.

In addition to the various federal court filings, on February 27, 2002, Burton, on behalf of Egri, town resident Edward Munster, and an informal organization known as Neighbors Opposed to Residential Atomic Dumps ("NORAD"), filed a complaint in Connecticut Superior Court against Connecticut Yankee and various town officials, seeking to have the settlement declared "null and void and of no legal effect." The complaint alleged causes of action based on Connecticut state law, Town laws, and the First Amendment. Connecticut Yankee removed that action to federal court and moved for a temporary restraining order ("TRO") to prevent the

---

1. The dismissal of a previous action brought by Connecticut Yankee seeking the same relief was affirmed by this Court in 2001 because it was unripe; at that time, Connecticut Yankee had not yet applied for a building permit from the Town. *See Connecticut Yankee Atomic Power Co. v. Town of Haddam Planning & Zoning Comm'n*, 19 Fed.Appx. 21 (2d Cir. 2001). Connecticut Yankee commenced the underlying action here after applying for a building permit from the Town and waiting 7 months without receiving a decision on that application.

plaintiffs from taking any further action challenging the validity of, or delaying, preventing, or interfering with Connecticut Yankee's construction of the ISFSI, except through appeal of the district court's orders in the underlying action.

The district court granted the TRO and held a hearing to consider a subsequent motion by Connecticut Yankee and the Town seeking a permanent injunction. Thereafter, in March 2002, the district court granted the permanent injunction, finding that Connecticut Yankee would suffer irreparable harm if the injunction did not issue and that any further actions challenging the validity of the consent order in other judicial fora would violate the terms of the order itself and undermine the district court's jurisdiction in the underlying action. The permanent injunction prohibited the plaintiffs, their attorneys, and all persons with notice of the order from seeking "any judgment or administrative ruling that would invalidate or otherwise interfere with implementation of [the settlement order] ... other than by direct appeal of this Court's Order or other filings in this action or in [the underlying action]." The district court based its jurisdiction to grant the permanent injunction on the All Writs Act, 28 U.S.C. § 1651.

Thereafter, the district court granted summary judgment in favor of the defendants on the grounds that none of the plaintiffs had standing to bring the case because none owned property adjacent to Connecticut Yankee's proposed building site, and none had made adequate assertions of particularized harm that would be suffered if the ISFSI construction proceeded. With respect to the matter of jurisdiction, the court stated:

Plaintiffs challenge the jurisdiction of the Court arguing that the All Writs Act cannot create jurisdiction where none previously existed. Plaintiffs are wrong in their understanding of both the All Writs Act and the underlying jurisdictional basis of this action. The All Writs Act gives this Court the authority to remove an action from state court in order to protect the integrity of its Order. Furthermore, jurisdiction would lie in this Court based on the claims alleged in the complaint. Those claims arise under federal law because each requires interpretation of and/or launches a challenge against the Agreement contained in the [consent order], which constitutes a "law of the United States" for purposes of 28 U.S.C. § 1331.

The plaintiffs filed a notice of appeal in July 2002 challenging both the permanent injunction and the summary judgment order. This Court opened Docket No. 02–7751 for the appeal.

Following the issuance of the permanent injunction discussed above, though prior to filing an appeal challenging that injunction, Burton commenced two additional suits against Connecticut Yankee in Connecticut Superior Court on behalf of other clients, seeking to enjoin construction of the ISFSI. She also wrote letters to the Town of Haddam Inland Wetlands Commission and appeared at a hearing before that body, asking it to revoke Connecticut Yankee's building permit. On the basis of these activities, Connecticut Yankee sought to have Burton declared in contempt of the district court's permanent injunction order. After a hearing, the district court found that Burton had violated the permanent injunction and held her in contempt of court.

The district court scheduled a second hearing to determine the attorneys' fees to be paid by Burton as a sanction for her actions. Despite notice of the hearing, Burton failed to attend, though she did file a general objection to Connecticut Yankee's request for attorney's fees on the

grounds that the district court lacked jurisdiction to order such fees, that an inadequate factual basis existed for awarding fees in the amount sought by Connecticut Yankee, and that she was unable to pay such fees. Following the hearing, the district court ordered Burton to pay fees and costs to Connecticut Yankee in the amount of $171,546.80. Burton filed a notice of appeal from the contempt order and the fee award, and this Court opened 02–9020 for that appeal.

*Connecticut Yankee Atomic Power Co. v. Town of Haddam, Docket No. 02–7227*

Egri has attempted to appeal from the district court's order memorializing the settlement between Connecticut Yankee and the Town. However, as a non-party to the suit below, Egri lacks standing to appeal. *See Marino v. Ortiz*, 484 U.S. 301, 304, 108 S.Ct. 586, 98 L.Ed.2d 629 (1988) (per curiam) (noting that appeal must ordinarily be filed by a party of record below). We have occasionally permitted appeals by those who, although not parties, have an interest affected by the action below. *See, e.g., United States v. Int'l Bhd. of Teamsters*, 931 F.2d 177, 183–84 (1991) (permitting non-party affiliates to appeal based on their contractual interests); *Martin–Trigona v. Shiff*, 702 F.2d 380, 386–87 (2d Cir.1983) (permitting trustees to appeal). However, Egri has not demonstrated the integral involvement with the action below that is generally required to invoke this exception.

Though Egri argues that, under Connecticut statutory and common law, he has standing to bring this appeal based on his status as a Haddam resident and taxpayer, the provisions on which Egri relies are directed at the situation where, unlike here, a town is unrepresented in a court action; they do not independently confer appellate standing on a disgruntled town resident who is unsatisfied with the outcome of his elected representatives' handling of a lawsuit. *See, e.g., Union v. Crawford*, 19 Conn. 331, at *5, 1848 WL 780 (1848); *cf. Nichols v. City of Ansonia*, 81 Conn. 229, 70 A. 636, 639 (1908) (noting the necessity of "special rules" to regulate individual citizens appearing on behalf of a town). Because Egri lacks standing to bring this appeal, we lack jurisdiction to hear it. *See Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 126 (2d Cir. 2003) ("Standing is a jurisdictional prerequisite to suit.").

*Egri v. Connecticut Yankee Atomic Power Co., Docket Nos. 02–7653, 02–7703*

■ These appeals address the issue of whether the district court properly denied motions on behalf of Egri, other citizens, and the Connecticut River Watershed Council to intervene in the underlying suit. A district court's denial of a motion to intervene is reviewed for abuse of discretion. *See In re Bank of New York Derivative Litigation*, 320 F.3d 291, 299 (2d Cir. 2003).

To intervene as a matter of right, an applicant must (1) timely move to intervene; (2) demonstrate his interest in the action; (3) show that his interest could be impaired by the disposition of the action; and (4) show that his interest is not adequately protected by the parties. *See* Fed. R.Civ.P. 24(a)(2); *New York News, Inc. v. Kheel*, 972 F.2d 482, 485 (2d Cir.1992). A motion to intervene may properly be denied if the applicant fails to satisfy any one of these four requirements; thus, an intervention motion may be denied solely because it was untimely filed. *See Farmland Dairies v. Comm'r of the N.Y. State Dept. of Agric. & Mkts.*, 847 F.2d 1038, 1043 (2d Cir.1988). A district court has discretion to evaluate the timeliness of a motion to intervene in light of "all the circumstances," including, generally, "(1) how long the applicant had notice of the interest before it made the motion to inter-

vene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." *United States v. Pitney Bowes, Inc.,* 25 F.3d 66, 70 (2d Cir.1994).

Here, the district court denied the intervention motions after an extensive hearing at which it was established that the applicants' attorney knew of the underlying lawsuit from its inception and that the applicants themselves were aware of the lawsuit well before the intervention motions were filed. However, despite this knowledge, the applicants chose not to seek intervention until after a settlement between the parties had been reached and the district court's final order memorializing that agreement had been entered. In light of the applicants' delay in seeking intervention, the district court's decision to deny the intervention motions by reason of untimeliness was not an abuse of discretion.

*Egri v. Connecticut Yankee, Docket No. 02–7751*

■ The appellants challenge the district court's jurisdiction over their state law claims, contending that removal jurisdiction based on the All Writs Act was determined to be improper by the Supreme Court's decision in *Syngenta Crop Protection, Inc. v. Henson,* 537 U.S. 28, 123 S.Ct. 366, 154 L.Ed.2d 368 (2002), which held that the All Writs Act does not create an independent jurisdictional basis for removal. However, because First Amendment claims were present on the face of the complaint at the time that it was removed into district court, the district court had independent subject matter jurisdiction over the case pursuant to 28 U.S.C. § 1331 at the time that it was removed. Given this independent jurisdictional basis for removing the action, the district court had authority to exercise supplemental jurisdiction over pendant state law claims, even after the First Amendment claims were withdrawn from the complaint. *See Parker v. Della Rocco,* 252 F.3d 663, 665–66 (2d Cir.2001) (per curiam) (holding that, where a district court properly exercises removal jurisdiction, the court may continue to exercise supplemental jurisdiction over state law claims, even after dismissal of federal claims).

■ The appellants further contend that the district court did not have jurisdiction to craft a permanent injunction that could compel them, as non-parties to the underlying suit, to abide by the consent decree issued in that suit. Appellants principally rely on *Association for Retarded Citizens of Connecticut, Inc. v. Thorne,* 30 F.3d 367 (2d Cir.1994), in which this Court held that the All Writs Act does not provide a jurisdictional basis for a district court to enforce the terms of a consent decree against non-parties to the decree. *Id.* at 370. *Association for Retarded Citizens* is inapposite here; unlike the district court in that case, here the district court "has sought not to bind appellants to the consent decree, but to enjoin them from acts that would frustrate the consent decree's operation on parties that are bound to the decree." *Int'l Bhd. of Teamsters,* 266 F.3d at 50. Similarly, the injunction issued by the district court in this case merely stipulated that that court was the proper forum in which to mount challenges to the consent decree; it did not purport to bind non-parties to the particular provisions of the decree itself.

Pursuant to the All Writs Act, a district court is authorized to bind non-parties where such action is necessary to preserve its ability to adjudicate proceedings already before it or to enforce its own prior decisions. *See In re Baldwin–United Corp.,* 770 F.2d 328, 338 (2d Cir.1985).

Thus, an injunction that merely seeks to enjoin behaviors that could frustrate the operation of a consent decree are authorized by the All Writs Act, even if the injunction operates against non-parties. *See Int'l Bhd. of Teamsters*, 266 F.3d at 50. Here, the permanent injunction challenged by the appellants was justified by the district court's need to protect the implementation of its prior order; it did not purport to force non-parties to abide by the terms of that order, except insofar as essential to the implementation of that order. Therefore, the district court had jurisdiction to issue the permanent injunction pursuant to the All Writs Act.

Turning to the propriety of the summary judgment order itself, we note that a district court's grant of summary judgment is reviewed *de novo*, resolving all ambiguities and drawing all factual inferences in favor of the non-moving party. *See Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.*, 182 F.3d 157, 160 (2d Cir.1999). Summary judgment is appropriate only if the moving party establishes that there exist no disputed issues of material fact, and that it is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56.

■ Here, the district court asserted two grounds for granting summary judgment in favor of defendants Connecticut Yankee and the Town: plaintiffs' failure to comply with the requirement of a Local Rule of the court, and plaintiffs' lack of standing to bring the asserted claims. *See Egri v. Connecticut Yankee Atomic Power Co.*, No. 3:02–cv–400(AHN), 2002 WL 32124913, 270 F.Supp.2d 285 (D.Conn. June 20, 2002). Putting aside any issues relating to compliance with the Local Rule, the district court's grant of summary judgment against the appellants may be affirmed on the ground that the appellants lacked standing to bring their suit.

To satisfy the constitutional standing requirement, a plaintiff must demonstrate that he has suffered an injury–in–fact–that is, a concrete injury that affects the plaintiff in "a personal and individual way." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 & n. 1, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). General status as a citizen or a taxpayer is insufficient to support a claim of improper application of the laws, without allegations of more particularized injury. *Id.* at 573–74; *see also Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 221–22, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974).

Here, the appellants' complaint alleges, *inter alia*, that Connecticut Yankee and the Town unlawfully entered into an agreement with one another to authorize Connecticut Yankee's building permit without following the procedures mandated by state and local law. Aside from a general injury premised on their status as residents of Haddam, the complaint alleges that the proposed construction could subject appellants to "devaluation of their property as well as nuisance conditions directly attributable to construction and maintenance activities ... such as noise, air pollution, water pollution, and heavy truck traffic." Compl. of Feb. 27, 2002 ¶ 21d. However, the appellants conceded at the March 15, 2002 hearing that their properties do not, in fact, adjoin the site of the proposed construction, which negates their claims of particularized harm. Tr. of Mar. 15, 2002 at 28–35. While this Court has previously found that a likelihood of exposure to emissions from a proposed facility will suffice to confer standing on a neighbor, even one whose property does not adjoin the facility, *see LaFleur v. Whitman*, 300 F.3d 256, 270 (2d Cir.2002), the appellants here have not alleged, as in *LaFleur*, that they will suffer any health injury as a result of the proposed construction. Their grievances are of the sort shared by all Haddam residents, rather than the "personal and individual" injuries

required to establish standing. *See Lujan*, 504 U.S. at 573 n. 1. Thus, the district court's order granting summary judgment to the defendants is affirmed.[2]

*Egri v. Connecticut Yankee Atomic Power Co., Docket No. 02–9020*

■ Burton seeks to challenge the district court's order finding her in contempt of court for violating its permanent injunction of March 15, 2002 by instituting two lawsuits in Connecticut state court seeking to prevent Connecticut Yankee's ISFSI construction, and by taking actions to institute agency proceedings that would prevent the ISFSI construction from proceeding. Burton did not appeal the permanent injunction when it was issued in March 2002; rather, she proceeded with the activities for which the district court held her in contempt and did not appeal the injunction itself until July 2002, as part of Docket No. 02–7751, above.

As this Court has explained:

[A] party may not challenge a district court's order by violating it. Instead, he must move to vacate or modify the order, or seek relief in this Court. If he fails to do either, ignores the order, and is held in contempt, he may not challenge the order unless it was transparently invalid or exceeded the district court's jurisdiction.

*United States v. Cutler*, 58 F.3d 825, 832 (2d Cir.1995). Here, the conduct that Burton engaged in which resulted in the district court's finding of contempt occurred prior to any attempt on her part to challenge the permanent injunction by means of appeal in this Court. Thus, she cannot challenge the district court's permanent injunction unless that order was invalid on its face or beyond the scope of the district court's jurisdiction. However, "to invoke

the transparently invalid exception, ... a defendant must make some good faith effort to seek emergency relief from the appellate court ..., or show compelling circumstances, such as a need to act immediately, excusing the decision not to seek some kind of emergency relief." *Id.* (citations omitted). As discussed above, the injunction did not exceed the district court's jurisdiction. Furthermore, Burton made no effort to seek relief from the injunction from this Court until over three months after its issuance, nor has she alleged any compelling circumstances which would excuse her delay in seeking appellate review of that order. Thus, the underlying injunction cannot be challenged in this appeal from the order holding Burton in contempt of court.

A district court's finding of contempt is reviewed for abuse of discretion. *See United States v. Local 1804–1, Int'l Longshoremen's Assoc., AFL–CIO*, 44 F.3d 1091, 1095 (2d Cir.1995). However, because a district court's power to regulate out-of-court behavior is not unbridled, "a contempt holding will fall unless the order violated by the contemnor is clear and unambiguous, the proof of non-compliance is clear and convincing, and the contemnor was not reasonably diligent in attempting to comply." *Id.* at 1096 (citations omitted).

■ Here, the district court's permanent injunction clearly and unambiguously stated that the order prohibited Burton, as attorney for the plaintiffs, "from seeking any judgment or administrative ruling that would invalidate or otherwise interfere with implementation of the [consent order] ... other than by a direct appeal of this Court's Order or other filings in this action or in the Related Action." *Egri v. Con-*

---

2. Still outstanding in this appeal is Connecticut Yankee's request for sanctions against Burton based on her failure timely to file a brief and appendix in this case. Because

Burton did file her brief and appendix within the time limits imposed by this Court's April 23, 2003 order, the outstanding motion for sanctions is denied.

*necticut Yankee Atomic Power Co.*, No. 3:02–cv–400(AHN) (D.Conn. Mar. 11, 2002). Burton conceded the clarity of this provision when she stated before the district court that the quoted provision "means exactly what it says." Tr. of June 20, 2002 at 28. However, she now argues that the language quoted above does not bar the behavior for which the district court found her to be in contempt. This argument is plainly without merit; the complaints in both state court lawsuits on which the contempt finding was based explicitly requested a halt to Connecticut Yankee's ISFSI construction activities. Similarly, Burton's activities before the Inland Wetlands Commission were directed at revoking Connecticut Yankee's construction permit. Thus, the district court did not abuse its discretion in holding Burton in contempt.

Burton also seeks to challenge the method by which the district court calculated the costs and fees that it charged to her as sanctions for her contemptuous behavior. However, she failed to appear below to challenge the calculation of fees sought by Connecticut Yankee, despite notice of the hearing at which the amount of sanctions was determined. Because Burton did not object to the district court's method of calculating fees in the proceeding below, she cannot now challenge the calculation on appeal. *See Cutler,* 58 F.3d at 835. Furthermore, insofar as Burton seeks to appeal those claims raised in the written objection to fees that she filed below, her claims are without merit. For the foregoing reasons, the orders of the district court are affirmed.